307 P.3d 142

Richard NELSON III, Kaliko Chun, James Akiona, Sr., Sherilyn Adams, Kelii Ioane, Jr., and Charles Aipia (deceased), Respondents/Plaintiffs/Appellants,

v.

HAWAIIAN HOMES COMMISSION, The Department of Hawaiian Home Lands, Jobie Masagatani, in her official capacity as Chair of the Hawaiian Homes Commission, Imaikalani P. Aiu, Perry Artates, Leimana K. Damate, Gene Ross Davis, Jeremy Kamakaneoaloha Hopkins, Michael P. Kahikina, Ian Lee Loy, And Renwick V.I. Tassill, in their official capacities as members of the Hawaiian Homes Commission,[1] Respondents/Defendants/Appellees,

and

Kalbert K. Young, in his official capacity as the State Director of Finance, and the State of Hawai'i, Petitioners/Defendants/Appellees.

No. SCWC–30110.

Supreme Court of Hawai'i.

June 28, 2013.

As Corrected July 8, 2013.

Reconsideration Denied July 17, 2013.

---

1. During the pendency of this motion, Jobie Masagatani succeeded Alapaki Nahale-a as the Chair of the Hawaiian Homes Commission, and Gene Ross Davis succeeded Henry K. Tancayo as a member of the Hawaiian Homes Commission.

Thus, pursuant to Hawai'i Rules of Appellate Procedure Rule ("HRAP") 43(c)(1) (2012), Masagatani and Davis have been substituted automatically for Nahale-a and Tancayo in this case.

Robert K. Nakatsuji, Girard D. Lau, and Charleen M. Aina, Honolulu, for petitioners/defendants/appellees.

David Kimo Frankel and Alan T. Murakami, Honolulu, for respondents/plaintiffs/appellants.

Melvyn M. Miyagi, Brian A. Kang, and Emi L.M. Kaimuloa, Honolulu, for respondents/defendants/appellees.

RECKTENWALD, C.J., NAKAYAMA, McKENNA and POLLACK, JJ., with ACOBA, J., Concurring and Dissenting Separately, and POLLACK, J., Concurring Separately.

Opinion of the Court by McKENNA, J.

## I. Introduction

Following the publication of this court's opinion in *Nelson v. Hawaiian Homes Comm'n*, 127 Hawai'i 185, 277 P.3d 279 (2012), Respondents/Plaintiffs–Appellants Richard Nelson III, Kaliko Chun, James Akiona, Sr., Sherilyn Adams, Kelii Ioane, Jr., and Charles Aipia (collectively "Plaintiffs"), represented by Native Hawaiian Legal Corporation ("NHLC") requested attorneys' fees and costs [2] as the prevailing party, pursuant to the private attorney general doctrine. Both the State of Hawai'i and the Department of Hawaiian Home Lands filed objections [3] to Plaintiffs' request, arguing, inter alia, that Plaintiffs were not the prevailing party, that Plaintiffs do not qualify for an award of fees under the private attorney general doctrine, and that sovereign immunity bars an award of fees in any event. Additionally, DHHL objected to the request for

costs as inadequately documented. For reasons that follow, we deny Plaintiffs' request for appellate attorneys' fees as barred by the State's sovereign immunity. We also deny Plaintiffs' request for appellate costs without prejudice.

## II. Discussion

### A. Prioriling Party

■ The first step in analyzing whether Plaintiffs are entitled to attorneys' fees (and costs) is to determine whether they are the "prevailing party." The "prevailing party" is the one who "prevails on the disputed main issue[.]" *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978). Even if the party does not prevail "to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." *Id.* (citation and footnote omitted).

■ "The trial court is required to first identify the principle issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." *MFD Partners v. Murphy*, 9 Haw.App. 509, 515, 850 P.2d 713, 716 (1992). In the circuit court, the principle issues raised were:

> Count I: The State violated its constitutional duty to sufficiently fund DHHL in order to rehabilitate native Hawaiian beneficiaries, under the Hawai'i State Constitution's Article XII, Sections 1 and 2
>
> Count 2: DHHL violated the constitution and breached its trust obligation to beneficiaries to seek sufficient funds from the legislature.
>
> Count 3: The DHHL Defendants breached their trust obligation to beneficiaries by

---

2. NHLC has requested both trial and appellate attorneys' fees and costs. This opinion will address only appellate attorneys' fees and costs. "[D]ecisions about fees incurred at the trial level are more properly within the trial court's discretion." *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 76 Hawai'i 396, 402, 879 P.2d 501, 507 (1994).

3. Prior to filing their objections, the State filed a "Motion to Determine Plaintiffs' Entitlement to Attorneys Fees (Including Applicability of Private Attorney General Doctrine) before Requiring Opposition as to amount of Fees," and DHHL filed its joinder in the State's Motion. Because both the State and DHHL subsequently filed memoranda in opposition to the Plaintiffs' request, these initial motions are hereby denied as moot.

leasing DHHL lands for commercial purposes to raise funds.

Count 4: The DHHL Defendants breached their obligation to trust beneficiaries by failing to ascertain whether trust lands are necessary for general homestead purposes before offering them for commercial lease. The circuit court granted summary judgment in favor of the State and DHHL on Counts 1 and 2 based on the political question doctrine. The parties entered into a Stipulation to Dismiss Count 3 without prejudice and Count 4 with prejudice. On balance, before the trial court, the Defendants were the prevailing parties, securing summary judgment in their favor on the first two counts and a dismissal with prejudice on the fourth count.

Before the ICA, Plaintiffs prevailed on Counts I and II (or at least succeeded in reversing summary judgment and securing a remand), as the ICA held that the political question doctrine did not bar the determination of what constituted sufficient sums that (1) the State must provide to DHHL and that (2) DHHL must request. *See Nelson v. Hawaiian Homes Comm'n*, 124 Hawai'i 437, 447, 246 P.3d 369, 379 (App.2011).

On certiorari, however, only the State further appealed the ICA's decision as to Count I, and the principle issue raised was

Does the political question doctrine bar Hawaiian Homes Commission Act (HHCA) beneficiaries from using Haw. Const. Article XII, Section 1's "sufficient sums" provision to demand more legislative funding of the Department of Hawaiian Home lands (DHHL), when that provision provides no guidance at all as to how quickly homesteads must be developed?

This court held that the political question doctrine did not bar determination of what constituted "sufficient sums" for one of four enumerated purposes under Article XII, Section 1: administrative and operating expenses. *Nelson*, 127 Hawai'i at 188, 277 P.3d at 282. Thus, the extent to which Plaintiffs "prevailed" is at issue.

This court has previously given guidance on determining which party prevailed in a case in which the relief granted was not solely in favor of one party. In *Food Pan-*

*try*, 58 Haw. at 620, 575 P.2d at 879, which involved a lease dispute, this court determined that the lessor was the prevailing party, even though the lessee did receive the relief he requested. In that case, the trial court found that the lessor was required to consent to a sublease under the lease, that the lessee materially breached that provision of the lease, and that the lessor was entitled to terminate the lease. *Id.* Even though the trial court granted the lessee's requested relief (that the lease not be forfeited and that damages for the breach be paid instead), the lessor was, "on balance," the successful party in the case, based on the pleadings and proof. *Id.*

In this case, although the State received the relief it requested on certiorari (that the political question bar the determination of what constitutes "sufficient sums" for the development of homestead lots), Plaintiffs are the prevailing party, because this court affirmed the ICA's judgment, albeit on a narrower ground that the political question doctrine did not bar determination of what constituted "sufficient sums" for administrative and operating expenses only. More importantly, part of Plaintiffs' claims against the State survived, in that the circuit court's grant of summary judgment in favor of the state was vacated, and this case has been remanded to the circuit court for further proceedings.

Having established that Plaintiffs prevailed on appeal, we next examine whether the private attorney general doctrine entitles them to an award of attorneys' fees.

## B. Private Attorney General Doctrine

■ Normally, "pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions," including the private attorney general doctrine. *Sierra Club v. Dep't of Transp.*, 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (2009). In *In re Water Use Permit Applications*, 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001)("*Waiahole*"), this court first recognized the private attorney general doctrine, which it summarized as follows:

The doctrine is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have "vindicated important public rights." Courts applying this doctrine consider three basic factors:

> "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision."

(citing *Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1314 (1977)). This court, however, declined to apply the doctrine. *Id.* It held that the plaintiffs met the first and third prongs of the doctrine, as the underlying case "involved constitutional rights of profound significance [i.e., the apportionment of water rights], and all of the citizens of the state, present and future, stood to benefit from the decision." 96 Hawai'i at 31, 25 P.3d at 806. But it also held that the plaintiffs had not met the second prong because they were merely one of several parties who "challenged the decision of a tribunal (the Commission on Water Resource Management or "CWRM") in an adversarial proceeding not contesting any action or policy of the government" and in which the government had not "either completely abandoned, or actively opposed, the plaintiffs' cause." 96 Hawai'i at 31–32, 25 P.3d at 806–07. Although declining to award attorneys' fees under the private attorney general doctrine in that case, this court did not foreclose the application of the doctrine "in any future case...." 96 Hawai'i at 32, 25 P.3d at 807.

In *Maui Tomorrow v. State*, 110 Hawai'i 234, 245, 131 P.3d 517, 528 (2006), this court once again declined to apply the doctrine to award attorneys' fees. In that case, the plaintiffs had succeeded in appealing a decision of the Board of Land and Natural Resources ("BLNR") to the circuit court, which remanded the matter for further findings, because that agency had not fulfilled its constitutional duty to protect customary and traditional native Hawaiian rights. *See id.* Although this court recognized that the plaintiffs' agency appeal qualified as contesting a governmental policy under the second prong of the private attorney general doctrine, it noted that the BLNR did not "abandon" or "actively oppose" the plaintiffs' cause; it merely mistakenly assumed that the CWRM was responsible for fulfilling the constitutional duty. *Id.* Therefore, this court found that the plaintiffs' case had not fully met the second prong of the private attorney general doctrine and concluded that the circuit court did not abuse its discretion in declining to award fees. *Id.*

This court did affirm the trial court's award of attorneys' fees under the private attorney general doctrine in *Sierra Club*, in which the plaintiffs challenged an exemption of the Superferry project from Hawai'i's environmental protection statutes. 120 Hawai'i at 230, 202 P.3d at 1275. As to the first prong, this court concluded that the Sierra Club plaintiffs vindicated an important public policy: they "establish[ed] the principle of procedural standing in environmental law in Hawaii and clarif[ied] the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS Chapter 343." 120 Hawai'i at 220, 202 P.3d at 1265. As to the second prong, this court concluded that the plaintiffs' suit was necessary because the DOT "wholly abandoned that duty [to consider both the primary and secondary impacts of the Superferry project on the environment] by issuing an erroneous exemption to the Superferry." 120 Hawai'i at 221, 202 P.3d at 1266. As to the third prong, this court stated that the plaintiffs' case benefited society as a whole. *Id.* In short, the plaintiffs met all three requirements entitling them to an award of attorneys' fees under the private attorney general doctrine.

In the instant case, Plaintiffs arguably met all three prongs, entitling them to attorneys' fees under the private attorney general doctrine. First, the "strength or societal importance of the public policy" they vindicated by their litigation was that the State now must fund DHHL's administrative and operating expenses. As a result, DHHL will be able to shift the funds it was spending on administrative and operating expenses towards fulfilling its trust duties to its beneficiaries. In

general, this court has stated, "It is undisputed that the rights of native Hawaiians are a matter of great public concern in Hawaii." *Pele Defense Fund v. Paty,* 73 Haw. 578, 614, 837 P.2d 1247, 1268 (1992).

Second, it was necessary for Plaintiffs to resort to private enforcement, as the State made it clear for years that it did not believe it had a duty to sufficiently fund DHHL, and DHHL for years had not requested sufficient sums from the legislature. The State and DHHL had clearly abandoned or actively opposed Plaintiffs' request that the State sufficiently fund DHHL.

Third, the number of people standing to benefit from the *Nelson* decision is substantial. At the very least, a shift in funding for administrative and operating expenses provides a benefit to the Hawaiian Home Lands trust, impacting at least the tens of thousands of known beneficiaries on the waiting list, and ultimately benefitting the State as a whole, because stewardship of Hawaiian Home Lands was an obligation taken on by the State as a condition for admission into the union. *See* Admission Act, Pub. L. No. 86–3, 73 Stat. 4 (1959) § 4. In short, Plaintiffs have arguably established an entitlement to attorneys' fees under the private attorney general doctrine.

However, the analysis does not end with the establishment of a right to fees under the doctrine. In analyzing the Sierra Club plaintiffs' attorneys' fee request under the private attorney general doctrine, this court also noted, "Application of the private attorney general doctrine is ... subject to the defenses which a defendant may have" and explored, inter alia, the State's defense of sovereign immunity. *Sierra Club,* 120 Hawai'i at 221, 225–29, 202 P.3d at 1266, 1270–74. In this case, the State and DHHL have both raised the defense of sovereign immunity as to the requested fees.

## C. Sovereign Immunity

"The doctrine of sovereign immunity 'refers to the general rule, incorporated in the Eleventh Amendment to the United States Constitution, that a state cannot be sued in federal court without its consent or an express waiver of its immunity. The doctrine ... also precludes such suits in state courts.'" 120 Hawai'i at 225–26, 202 P.3d at 1270–71 (citations omitted). "It is well established that the State as sovereign is immune from suit except as it consents to be sued." *Figueroa v. State,* 61 Haw. 369, 381, 604 P.2d 1198, 1205 (1979) (citations omitted).

In *Sierra Club,* we stated

"[A]n award of costs and fees to a prevailing party is inherently in the nature of a damage award." [4] *Fought,* 87 Hawai'i 37, 51, 951 P.2d 487, 501 (1998). Accordingly, to properly award attorney's fees and costs against [the State] in this case, there must be "a clear relinquishment" of the State's immunity in this case. *Bush* [*v. Watson,* 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) ].

*Sierra Club,* 120 Hawai'i at 226, 202 P.3d at 1271. It is true that sovereign immunity did not bar the Plaintiffs' underlying claims, which were for declaratory and injunctive relief for violations of Article XII, Section 1, and not damages. *See Kaho'ohanohano v. State,* 114 Hawai'i 302, 337, 162 P.3d 696, 731 (2007)("[S]overeign immunity will not be a bar where governmental action is challenged as unconstitutional.") (citing *Pele Defense Fund,* 73 Haw. at 607, 837 P.2d at 1265). However, that sovereign immunity was no bar to the underlying claim "does not necessarily result in a right to attorneys' fees." *Taomae,* 110 Hawai'i at 333, 132 P.3d at 1244.

Plaintiffs' arguments parallel the analysis in the *Sierra Club* decision. They argue that

---

**4.** The Concurrence/Dissent cites *Fought* for the proposition that "[a]n award of fees and costs grounded in the inherent equitable power of the court is incidental to the underlying suit to which it is attached and thus cannot conceptually be denominated as in the nature of a separate damages award." Concurrence/Dissent at II.B (emphasis in Concurrence/Dissent). Respectfully, *Fought* observed the opposite: "[T]axation of

costs and attorneys' fees is essentially an award of damages...." 87 Hawai'i at 52, 951 P.2d at 502 (emphasis added). It would appear, then, that an award of fees under the private attorney general doctrine is in the nature of damages; therefore, under *Sierra Club,* in order to award fees under the doctrine, a waiver of sovereign immunity must exist. *See Sierra Club,* 120 Hawai'i at 226, 202 P.3d at 1271.

the waiver of sovereign immunity for private attorney general fees in this case is statutory. "This court has noted that the State has waived immunity to suit only to the extent as specified in HRS chapters 661[5] and 662[6]." *Taylor–Rice v. State*, 105 Hawai'i 104, 110, 94 P.3d 659, 665 (2004) (citation omitted).[7] In *Sierra Club*, this court concluded that HRS § 661–1 waived sovereign immunity on all claims founded upon any statute, the statute in that case being HRS § 343–7 (1993), which authorized judicial review of a state agency's decisions concerning environmental assessments and environmental impact statements. 120 Hawai'i at 226–28, 202 P.3d at 1271–73. This court stated, "Although the text of HRS § 343–7 does not explicitly state that suits may be brought against the State, interpreting the text of [the subsections authorizing judicial review] as something other than a waiver of sovereign immunity would create an absurd result." 120 Hawai'i at 227, 202 P.3d at 1272. The *Sierra Club* court then further held that, because the State consented to be sued, its liability is to be "judged under the same principles as those governing the liability of private parties." 120 Hawai'i at 229, 202 P.3d at 1274 (citing *Fought*, 87 Hawai'i at 56, 951 P.2d at 506). It concluded that the statutory waiver of immunity found in HRS §§ 661–1(1) and 343–7, coupled with the private attorney general doctrine, provided a basis for the award of attorneys' fees to the plaintiffs. 120 Hawai'i at 229, n. 30, 202 P.3d at 1274, n. 30.

**1. HRS § 661–1(1) and Chapter 632**

■ In this case, Plaintiffs parallel the analysis in *Sierra Club* (which drew heavily upon *Fought*, 87 Hawai'i 37, 951 P.2d 487) to argue that HRS § 661–1(1)'s waiver of sovereign immunity applies, and that their claims were founded on statute, specifically HRS Chapter 632 (1993). For its part, the Dissent argues that "Plaintiffs here should not have to demonstrate a waiver of sovereign immunity specifically over attorneys' fees," citing *Fought* and *Sierra Club*'s extension of *Fought*. Concurrence/Dissent at II.A. We respectfully disagree with both the Plaintiffs and the Concurrence/Dissent because the instant case does not implicate HRS § 661–1 or any statutory waiver of sovereign immunity; rather, this case involves claims for declaratory and injunctive relief based on alleged constitutional violations.

*Fought* held that "a further waiver of sovereign immunity is not necessary in order for HRS § 607–14 [a fee-shifting statute for "all actions in the nature of assumpsit"] to apply to the state and its respective agencies in matters which, by virtue of the express waiver of sovereign immunity set forth in HRS § 661–1, the state (or any of its agencies) has become a party." 87 Hawai'i at 56, 951 P.2d at 506. *Sierra Club* then extended *Fought*'s

---

**5.** HRS § 661–1(1) (1993) provides, with emphasis added:

**Jurisdiction.** The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.

(1) <u>All claims against the State founded upon any statute of the State;</u> or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.

**6.** HRS Chapter 662 (1993) is the State Tort Liability Act, which is not at issue in this appeal.

**7.** Since the passage of Act 395 in 1988, which created HRS Chapter 673, also known as the Native Hawaiian Trust Judicial Relief Act, there are now at least <u>three</u> statutory bases for the waiver of the State's sovereign immunity: HRS Chapters 661, 662, *and* 673. It appears Chapter 673 stands on equal footing with Chapters 661 and 662. *See, e.g.,* Mia Y. Teruya, *The Native Hawaiian Trusts Judicial Relief Act: The First Step in an Attempt to Provide Relief,* 14 U. Haw. L.Rev. 889, 905 (1992)("This express waiver of [the State's] sovereign immunity [found in Chapter 673] is unique. In the past, the State has only allowed a waiver of sovereign immunity for tort and contract actions against the state [pursuant to Chapters 662 and 661, respectively]. No other state in the country allows itself to be sued for breaches of its fiduciary duties.")(footnotes omitted).

holding that a further waiver of sovereign immunity was not necessary in order for the private attorney general doctrine to apply to the state, by virtue of the express waivers of sovereign immunity set forth in HRS §§ 661–1(1) and 343–7. *Sierra Club*, 120 Hawai'i at 229, 202 P.3d at 1274.

However, *Fought*'s (and *Sierra Club*'s) holdings cannot be extended to this case, because this case does not truly arise under HRS § 661–1. Plaintiffs argue that their case fits under HRS § 661–1's statutory waiver of sovereign immunity because their claims are "founded upon any statute of the State," with the statute being HRS § 632–1, which authorizes declaratory and injunctive relief. We have already rejected this line of reasoning, however, as follows: "Where a party seeks only injunctive relief, the ability to sue the state does not stem from a waiver of sovereign immunity, but from the fact that sovereign immunity does not bar the suit in the first place." *Sierra Club*, 120 Hawai'i at 229 n. 30, 202 P.3d at 1274 n. 30. Therefore, "no clear statutory waiver ... that could be extended to attorney's fees" is present when the underlying claim is for declaratory and/or injunctive relief. *Id.* Moreover, we have also already held that declaratory and injunctive relief based on claims of constitutional violations is "not 'cognizable under HRS chapter 661 ....' " *Kaho'ohanohano*, 114 Hawai'i at 338, 162 P.3d at 732 (brackets omitted). Because *Fought* and *Sierra Club* would allow attorneys' fees awards based upon waivers of sovereign immunity over the underlying claims, found in HRS § 661–1 and HRS §§ 607–14 and 343–7, respectively, these cases are of little assistance to the Plaintiffs and the Concurrence/Dissent.

### 2. Chapter 673

■ Additionally, Plaintiffs argue that the State also waived its sovereign immunity pursuant to Chapter 673 (1993), the Native Hawaiian Trusts Judicial Relief Act. Chapter 673 governs claims of mismanagement of Home Lands Trust assets. It is true that Chapter 673 contains a clear general waiver of the State's sovereign immunity, *see Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 358, 133 P.3d 767, 787 (2006)("A plain reading of HRS § 673–1 indicates that it unequivocally waives the State's sovereign immunity" over breach of trust claims), HRS § 673–1(a) ("The State waives its immunity for any breach of trust or fiduciary duty resulting from the acts or omissions of its agents, officers and employees in the management and disposition of trust funds and resources of ... [t]he Hawaiian home lands trust...."). There is also a clear fee-shifting provision, which arguably could include attorneys' fees under the private attorney general doctrine. *See, e.g.,* HRS § 673–5(b) (1993) ("In any action brought under this chapter in which there is no finding by the court that the claims pled were frivolous the court may, as it deems just, award to a prevailing plaintiff and enter as a part of its order or judgment, a reasonable sum for costs and expenses incurred, including reasonable attorney's fees.") Plaintiffs, however, did not bring their claims under Chapter 673 in their First Amended Complaint; Chapter 673 is not even mentioned.

Although Plaintiffs' allegations are about the Hawaiian Home Lands Trust, they contend that the State failed to provide sufficient sums to DHHL in violation of its constitutional obligations under Article XII, §§ 1 and 2, and not in violation of Chapter 673. Plaintiffs allege that DHHL also violated the constitution and breached its fiduciary duties by failing to request sufficient sums, that DHHL breached its fiduciary duties by commercially leasing homestead lands in Kealakehe to a non-Hawaiian entity, and that DHHL should be prohibited from commercially leasing homestead lands for non-homesteading purposes without first making specific findings that such lands are not needed for homesteads. Their claims against DHHL expressly sound in trust law, not Chapter 673.

Although Plaintiffs do not allege that existing trust land or assets were improperly managed or disposed of, they do allege that "sufficient sums" are constitutionally mandated to be added to the trust assets and the Defendants have breached constitutional and trust duties in failing to do so. From that perspective, Plaintiffs' claims appear to fall under Chapter 673 because they are about

"breach of trust or fiduciary duty resulting from the acts or omissions of [the State's] agents, officers and employees in the management and disposition of trust funds and resources of ... [t]he Hawaiian home lands trust[.]"

However, Plaintiffs did not assert Chapter 673 in their First Amended Complaint. In addition, other provisions in Chapter 673 make it apparent that, while Plaintiffs generally allege breach of trust, their claims do not allege Chapter 673 violations or seek Chapter 673 relief. First, the relief Plaintiffs request does not match the relief authorized under Chapter 673. In their First Amended Complaint, Plaintiffs' requested only declaratory and injunctive relief, not damages (other than attorneys' fees), and not a return of trust land or moneys, which is the only relief that Chapter 673 authorizes. *See* HRS § 673–4(a) (1993) ("In an action under this chapter the court may only award land or monetary damages to restore the trust which has been depleted as a result of any breach of trust duty[,]" as well as some actual damages).[8]

Second, there is no evidence in the record that Plaintiffs complied with HRS § 673–3 (1993)'s notice and exhaustion of administrative remedies requirements, which are:

Before an action may be filed in circuit court under this chapter, the party filing suit shall have exhausted all administrative remedies available, and shall have given not less than sixty days written notice prior to filing of the suit that unless appropriate remedial action is taken suit shall be filed. All executive branch departments shall adopt in accordance with chapter 91, such rules as may be necessary to specify the procedures for exhausting any remedies available.

There is a process by which Plaintiffs could have exhausted their administrative remedies. *See, e.g.,* Hawai'i Administrative Rules

Chapter 5, Title 10, Subchapter 3, Contested Case Rules.

Failure to comply with HRS § 673–3 has proven fatal to Chapter 673 breach of trust claims. In *Office of Hawaiian Affairs,* 110 Hawai'i at 359, 133 P.3d at 788, the only case construing Chapter 673, we held that plaintiffs must exhaust their administrative remedies and provide sixty days' notice, pursuant to HRS § 673–3; absent fulfillment of these requirements, the circuit and appellate courts lack subject matter jurisdiction over the Chapter 673 claims. Plaintiffs' claims were not brought under Chapter 673 because Chapter 673 is not mentioned in their First Amended Complaint, and there is nothing in the record about the exhaustion of administrative remedies and the notice given to the State Defendants. That being the case, the circuit court would have lacked jurisdiction to hear claims alleging Chapter 673 violations, and this court is "preclude[d] from reviewing any claims brought under Chapter 673," including, presumably, claims for an award of attorneys' fees pursuant to the private attorney general doctrine. *Id.*

In short, it would appear, as Defendants argue, that Plaintiffs' after-the-fact reliance on Chapter 673 for a waiver of the State's sovereign immunity is solely for the purpose of their attorneys' fee request. Plaintiffs' claims were not made under Chapter 673.

### 3. Article XII

■ Rather, at their core, and as asserted in their First Amended Complaint, Plaintiffs' claims were about the Defendants' violation of their constitutional duties under Article XII, Section 1. In *Kaho'ohanohano,* 114 Hawai'i at 338, 162 P.3d at 732, this court considered claims based on the Hawai'i Constitution to be "not cognizable under HRS § 661" as "not 'founded upon any statute of the State....'" Thus, one must look to the true basis of Plaintiffs' claim, Article XII, Section 1, for a clear waiver of

---

8. One law review article has interpreted Chapter 673 to exclude injunctive relief. *See* Eric K. Yamamoto, Moses Haia, and Donna Kalama, *Courts and the Cultural Performance: Native Hawaiians' Uncertain Federal and State Rights to Sue,* 16 U. Haw. L. Rev. 1, 74 (1994)("Most important, Chapter 673 limits available remedies. Suits

may be initiated only to restore the trust corpus depleted by the wrongful alienation or use of trust lands or funds, and to recover actual out-of-pocket damages sustained by individual claimants. Chapter 673 does not authorize consequential damages, punitive damages, land awards or injunctive relief.")(footnotes omitted).

the State's sovereign immunity, and there is none. Article XII, Section 1 provides:

Anything in this constitution to the contrary notwithstanding, the Hawaiian Homes Commission Act, 1920, enacted by the Congress, as the same has been or may be amended prior to the admission of the State, is hereby adopted as a law of the State, subject to amendment or repeal by the legislature; provided that if and to the extent that the United States shall so require, such law shall be subject to amendment or repeal only with the consent of the United States and in no other manner; provided further that if the United States shall have been provided or shall provide that particular provisions or types of provisions of such Act may be amended in the manner required for ordinary state legislation, such provisions or types of provisions may be so amended. The proceeds and income from Hawaiian home lands shall be used only in accordance with the terms and spirit of such Act. The legislature shall make sufficient sums available for the following purposes: (1) development of home, agriculture, farm and ranch lots; (2) home, agriculture, aquaculture, farm and ranch loans; (3) rehabilitation projects to include, but not limited to, educational, economic, political, social and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved; (4) the administration and operating budget of the department of Hawaiian home lands; in furtherance of (1), (2), (3) and (4) herein, by appropriating the same in the manner provided by law.

Thirty percent of the state receipts derived from the leasing of cultivated sugarcane lands under any provision of law or from water licenses shall be transferred to the native Hawaiian rehabilitation fund, section 213 of the Hawaiian Homes Commission Act, 1920, for the purposes enumerated in that section. Thirty percent of the state receipts derived from the leasing of lands cultivated as sugarcane lands on the effective date of this section shall continue to be so transferred to the native Hawaiian rehabilitation fund whenever such lands are sold, developed, leased, utilized, transferred, set aside or otherwise

disposed of for purposes other than the cultivation of sugarcane. There shall be no ceiling established for the aggregate amount transferred into the native Hawaiian rehabilitation fund.

There being no waiver of the State's sovereign immunity under Article XII, Section 1 for an award of attorneys' fees, the State's sovereign immunity bars an award of appellate attorneys' fees to Plaintiffs based on the private attorney general doctrine, based on the record that exists at this juncture.

The Dissent argues that "because Plaintiffs' constitutional claims in the underlying action did not implicate the State's sovereign immunity, their claims for an award of attorneys' fees under the private attorney general doctrine should not require a separate waiver of sovereign immunity." Concurrence/Dissent at V. Implicit in this argument is an extension of *Fought*'s HRS § 661–1 holding to cases involving constitutional violations. In support of this argument, the Dissent states, "A waiver of sovereign immunity separate from the underlying claim is not necessary under this court's prior jurisprudence, ... whether the waiver is founded on statute, *see Fought,* 87 Hawai'i at 56, 951 P.2d at 506, or the claim is founded on a constitutional provision, *see Kaho'ohanohano,* 114 Hawai'i at 337, 162 P.3d at 731." Concurrence/Dissent at IV.

Respectfully, this statement expands *Fought*'s holding too broadly and misapplies *Kaho'ohanohano.* Relevant to this case, *Kaho'ohanohano* held only that sovereign immunity is no defense against a claim for declaratory and injunctive relief concerning an act of the legislature that allegedly violated the Hawai'i Constitution. *Kaho'ohanohano,* 114 Hawai'i at 335–38, 162 P.3d at 729–32. Attorneys' fees were not at issue. Therefore, *Kaho'ohanohano* does not stand for the proposition that if the underlying action is not barred by sovereign immunity, an entitlement to fees follows.

In fact, we have already expressly rejected this argument on a motion for attorneys' fees nearly indistinguishable from the instant one on the issue of sovereign immunity. In *Taomae,* as in this case, the plaintiffs prevailed

on their claim that the state legislature's action violated the Hawai'i Constitution. 110 Hawai'i at 332, 132 P.3d at 1243. The *Tao-mae* plaintiffs then requested attorneys' fees, declaring (similarly to the Concurrence/Dissent) that "if sovereign immunity does not bar the underlying action, then no waiver is required for the imposition of fees and costs" pursuant to this court's "inherent powers." 110 Hawai'i at 333, 132 P.3d at 1244. We rejected that argument, holding "simply because 'sovereign immunity did not bar the instant contest,'" because the plaintiffs' claim was for injunctive relief, "it cannot be assumed that an assessment of fees and costs is appropriate." *Id.* We denied attorneys' fees, concluding, "Plaintiffs have not demonstrated an entitlement to fees under *Fought.* And unlike in *Fought,* no statute authorizes a shift in fees...." *Id.* Thus, contrary to the Dissent's assertion in Concurrence/Dissent at II.A, this case is indistinguishable from *Tao-mae.* Even where the underlying suit for declaratory and injunctive relief for a constitutional violation is not precluded by sovereign immunity, there must exist some authorization for a shift in attorneys' fees, as those are in the nature of damages. In this case, there is no such authorization.

*Kaho'ohanohano* also did not apply *Fought's* HRS § 661-1 holding to constitutional claims, and in fact, held that constitutional claims are not founded upon any statute and are therefore not cognizable under HRS § 661. 114 Hawai'i at 338, 162 P.3d at 732. In short, there exists no authority entitling a prevailing party to attorneys' fees under the private attorney general doctrine where sovereign immunity did not preclude an underlying declaratory and/or injunctive relief claim that the State violated the Hawai'i Constitution.

## D. Costs

██ HRAP Rule 39(d) (2012) requires parties requesting appellate costs to "submit[ ] an itemized and verified bill of ... costs, ... and, where appropriate, copies of invoices, bills, vouchers, and receipts...." In this case, Plaintiffs filed an Exhibit A with their request for costs that did not include supporting documentation such as invoices, bills, vouchers, and receipts.

██ DHHL objected to the costs request as noncompliant with HRAP Rule 39. When an adverse party objects to the award of costs on the basis of noncompliance with HRAP Rule 39's itemization and documentation requirements, this court may deny those costs. *See, e.g., Rapozo v. Better Hearing of Hawai'i, LLC,* 120 Hawai'i 257, 264, 204 P.3d 476, 483 (2009).

██ Plaintiffs then submitted with their Reply a corrected costs request, including copies of invoices, bills, vouchers, and receipts. Documented cost requests that are unchallenged by an adverse party can be granted without regard to their reasonableness. *Blair v. Ing,* 96 Hawai'i 327, 335, 31 P.3d 184, 192 (2001). It would not be fair, however, to presume Plaintiffs' costs to be reasonable, as neither the State nor DHHL has had an opportunity to challenge the reasonableness of Plaintiffs' costs, because they were itemized and documented for the first time in Plaintiffs' Reply, and nothing in the Hawai'i Rules of Appellate Procedure allows the State or DHHL to file any response to a Reply. Accordingly, Plaintiffs' request for costs is denied without prejudice. *See County of Hawai'i v. C & J Coupe Family Ltd. P'ship,* 120 Hawai'i 400, 414–15, 208 P.3d 713, 727–28 (2009)("[W]aiting until the Errata to provide the appropriate support [for fees] leaves the [Appellee] without an opportunity to make specific objections to those items. Therefore, Appellant's request for attorneys' fees for preparation of the Request and the subsequent Response is denied.") At the appropriate time upon remand, Plaintiffs may renew their request for appellate costs before the circuit court, which is in a position to award both trial and appellate costs. A properly documented appellate cost request will allow both the State and DHHL an opportunity to file any objections.

## III. Conclusion

Plaintiffs' request for appellate attorneys' fees pursuant to the private attorney general doctrine is denied as barred by the doctrine of sovereign immunity, based on the record that exists at this juncture. Plaintiffs' re-

quests for appellate costs is denied without prejudice.

## Concurring Opinion by POLLACK, J.

I agree that Plaintiffs satisfied the three requirements of the private attorney general doctrine. However, Plaintiffs seek attorneys' fees pursuant to HRS § 661–1(1) and HRS Chapters 632 and 673, which are not implicated in this case. Additionally, Plaintiffs have not raised any other basis for an award of attorneys' fees.[1] *See, e.g.,* HRS § 602–5(a)(6).[2] I also do not believe that the record reflects that Plaintiffs sufficiently raised the issue of whether attorneys' fees are incidental to the underlying claim(s) in this case. Accordingly, I concur in the result reached by the majority.

## Concurring and Dissenting Opinion by ACOBA, J.

In this jurisdiction, the private attorney general doctrine was recognized in *In re*

1. *See Taomae v. Lingle,* 110 Hawai'i 327, 333 n. 14, 132 P.3d 1238, 1245 n. 14 (2006) (declining to address plaintiffs' untimely claims for attorneys' fees based on court's inherent equitable powers and HRS § 602–5(7), presently numbered HRS § 602–5(a)(6) (Supp.2012), and denying request for fees on such grounds).

2. "[T]he inherent power of the supreme court is codified in HRS § 602–5(7) [presently § 602–5(a)(6)], which acknowledge[]s this court's jurisdiction and power to make and award such judgments ... and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice[.]" *Farmer v. Admin. Dir. of the Court,* 94 Hawai'i 232, 241, 11 P.3d 457, 466 (2000) (quotation marks and brackets omitted). *See, e.g., CARL Corp. v. State, Dep't of Educ.,* 85 Hawai'i 431, 460, 946 P.2d 1, 30 (1997) (recognizing and awarding attorneys' fees based on court's inherent powers "to create a remedy for a wrong even in the absence of specific statutory remedies, and to prevent unfair results") (quotation marks omitted).

1. As stated in *Serrano,* "[t]hese are in general: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision." *Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1314.

*Water Use Permit Applications,* 96 Hawai'i 27, 30, 25 P.3d 802, 805 (2001) (*Waiahole II* ). *Waiahole II* relied extensively on *Serrano v. Priest,* 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1313–14 (1977). *Serrano* established the three-part test this court has adopted as determinative of whether the private attorney general doctrine applies.[1] 141 Cal.Rptr. 315, 569 P.2d at 1314. The majority determines that Respondents/Plaintiffs–Appellants Richard Nelson III, Kaliko Chun, James Akiona, Sr., Sherilyn Adams, Kelii Ioane, Jr., and Charles Aipia (collectively "Plaintiffs") satisfy that test, but decides that sovereign immunity bars recovery as to the attorneys' fees. I would not bar relief for such fees in the underlying case.[2]

### I.

Plaintiffs in the underlying case sought damages for declaratory and injunctive relief for violations of Article XII, Section 1 of the Hawai'i constitution.[3] *Nelson v. Hawaiian*

2. I concur with the majority's holding that Plaintiffs are the prevailing party and satisfy the three prongs of the private attorney general doctrine, *see* majority's opinion at 165–68, 307 P.3d at 145–48; that this court should address only Plaintiffs' request for appellate attorneys' fees and costs, *id.* at 165, n. 3, 307 P.3d at 145, n. 3 (" '[D]ecisions about fees incurred at the trial level are more properly within the trial court's discretion.' ") (quoting *S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 76 Hawai'i 396, 402, 879 P.2d 501, 507 (1994)); and that Plaintiffs' request for appellate costs should be denied without prejudice, *id.* at 173, 307 P.3d at 153.

3. As the majority notes, the principle issues before the circuit court were:

> Count 1: The State violated its constitutional duty to sufficiently fund [the Department of Hawaiian Home Lands (DHHL)] in order to rehabilitate native Hawaiian beneficiaries, under the Hawai'i State Constitution's Article XII, Sections 1 and 2
> Count 2: DHHL violated the constitution and breached its trust obligation to beneficiaries to seek sufficient funds from the legislature.
> Count 3: The DHHL Defendants breached their trust obligation to beneficiaries by leasing DHHL lands for commercial purposes to raise funds.
> Count 4: The DHHL Defendants breached their obligation to trust beneficiaries by failing to ascertain whether trust lands are necessary for general homestead purposes before offering them for commercial lease.

*Homes Comm'n,* 127 Hawai'i 185, 189, 277 P.3d 279, 283 (2012). With respect to sovereign immunity, this court has held that generally the State cannot be sued without its consent or waiver of immunity:

> The doctrine of sovereign immunity "refers to the general rule, incorporated in the Eleventh Amendment to the United States Constitution, that a state cannot be sued in federal court without its consent or an express waiver of its immunity. U.S. Const. amend. XI. The doctrine of sovereign immunity, as it has developed in Hawai'i, also precludes such suits in state court."

*Sierra Club v. Dep't of Transp. of State of Hawai'i,* 120 Hawai'i 181, 225–26, 202 P.3d 1226, 1270–71 (2009) (*Sierra Club II* ) (quoting *State ex. rel. Anzai v. Honolulu,* 99 Hawai'i 508, 515, 57 P.3d 433, 440 (2002)) (footnote omitted) (citation omitted). Plaintiffs' claims were not barred by sovereign immunity because they sought to enjoin governmental action as unconstitutional. It is well established that "sovereign immunity may not be invoked as a defense by state officials who comprise an executive department of government when their action is attacked as being unconstitutional." *Pele Defense Fund v. Paty,* 73 Haw. 578, 582, 837 P.2d 1247, 1252 (1992); *Kaho'ohanohano v. State,* 114 Hawai'i 302, 337, 162 P.3d 696, 731 (2007) (noting that sovereign immunity will not be a bar where governmental action is challenged as unconstitutional); *Washington v. Fireman's Fund Ins. Companies,* 68 Haw. 192, 198, 708 P.2d 129, 134 (1985) (same).

Furthermore, Plaintiffs' claims were not barred in the underlying proceedings because they sought injunctive and declaratory relief. This court has adopted a rule that was derived from *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which distinguishes the impact of sovereign immunity on actions seeking prospective relief (i.e., injunctions) from its impact on actions seeking retrospective relief (i.e., "relief that is 'tantamount to an award of damages for a past violation of law' "). *Sierra Club II,* 120 Hawai'i at 226, 202 P.3d at 1271 (quoting *Pele Defense Fund,* 73 Haw. at 609–10, 837 P.2d

at 1266). Actions seeking prospective relief do not implicate the State's sovereign immunity. *Id.*

This is true even if such relief is "accompanied by a substantial ancillary effect on the state treasury." *Pele Defense Fund,* 73 Haw. at 609, 837 P.2d at 1266 (citing *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citations omitted)); *see Taomae v. Lingle,* 110 Hawai'i 327, 333, 132 P.3d 1238, 1244 (2006) ("sovereign immunity does not bar the proceedings before the court inasmuch as this case involves injunctive relief"). However, "relief that is 'tantamount to an award of damages for past violation of . . . law, even though styled as something else,' is barred by sovereign immunity." *Pele Defense Fund,* 73 Haw. at 609–610, 837 P.2d at 1266 (citing *Papasan,* 478 U.S. at 278, 106 S.Ct. 2932). Thus, insofar as Plaintiffs requested relief in the underlying case that will have a prospective effect, sovereign immunity would not bar relief, "even though accompanied by a substantial ancillary effect on the state treasury." *Id.* at 609, 837 P.2d at 1266.

## II.

Despite the fact that no waiver of sovereign immunity was required in order for Plaintiffs to succeed on their claims in the underlying action, the majority concludes that a separate waiver of sovereign immunity is required in order for Plaintiffs to recover attorneys' fees. Majority's opinion at 170, 307 P.3d at 150.

## A.

The majority grounds the requirement that a separate waiver of sovereign immunity is needed over attorneys' fees on the concept of an award of attorneys' fees as a "damages award," majority's opinion at 168, 307 P.3d at 148, and reasons that, under *Sierra Club II,* because an award of attorneys' fees constitutes a "damages award," a separate relinquishment of the State's immunity is required over any award of fees, even if such an award is premised on the private attorney

Majority's opinion at 165–66, 307 P.3d at 145–46.

general doctrine. *See* majority's opinion at 169–70, 307 P.3d at 149–50.

However, *Sierra Club II*'s statement "that an award of costs and fees to a prevailing party is inherently in the nature of a damage award[,]" 120 Hawai'i at 226, 202 P.3d at 1271, does not mandate a separate waiver of sovereign immunity. It is important to distinguish between cases where relief sought in the underlying case is "prospective" versus "tantamount to an award of damages...." *Id.* (citation omitted). *Sierra Club II* stated that "[a]ccordingly, to properly award attorney's fees and costs against [the State agency] in this case, there must be a 'clear relinquishment' of the State's immunity in this case." *Id.* (quoting *Bush v. Watson*, 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996)) (emphases added). *Sierra Club II* then went on to determine only whether there was a waiver of sovereign immunity over the underlying action, and not whether there was a waiver of sovereign immunity over attorneys' fees. *See id.* ("In this case, the legislature has waived the state's sovereign immunity for the action underlying this case, through HRS § 343–7 [ (1993) ]."). This court concluded that "there has been a clear waiver of the State's sovereign immunity from suit through HRS § 661–1(1) [ (1993) [4]] and HRS § 343–7 [5] [ , ]" and "[a]s such, [the government] will be judged under the same principles as those governing the liability of [a private entity] for attorneys' fees resulting from a violation of HRS chapter 343." *Id.* (internal quotation marks omitted). Thus, entitlement to attorneys' fees is determined by looking at the underlying claims, as this court did in *Sierra Club II*, and treating the award of fees as in an ordinary case. *Id.* Similarly, as discussed *infra*, where the underlying claim is not subject to sovereign immunity because it is exempt from sovereign immunity, the attorneys' fees award pursuant to the private attorney general doctrine does not require a separate "waiver," because the distinction between prospective and retrospective relief, *see id.* (citing *Pele Defense Fund*, 73 Haw. at 607, 837 P.2d at 1265), as far as requiring a wavier of sovereign immunity, is made with respect to the underlying action.

*Sierra Club II*'s "damages" reference can only be understood in the context of *Fought & Co., Inc. v. Steel Engineering and Erection, Inc.*, 87 Hawai'i 37, 951 P.2d 487 (1998), from which it was derived. In *Fought*, this court cited *Uyemura v. Wick*, 57 Haw. 102, 551 P.2d 171 (1976). In *Uyemura*, attorneys fees were considered an expense in the underlying case and thus recoverable as a head of damages. 57 Haw. at 109, 551 P.2d at 176. This court thus said, "it is generally held that where a wrongful act of the defendant has involved the plaintiff in litigation with others, or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages." *Id.* at 108–09, 551 P.2d at 176. Therefore, "where a wrongful act of a defendant causes a plaintiff to engage in litigation with a third party in order to protect his or her rights or interests, attorneys' fees incurred in litigating with that third party may be chargeable against the wrongdoer as an element of the plaintiff's damages." *Fought*, 87 Hawai'i at 51, 951 P.2d at 501 (original emphasis omitted) (emphasis added). *Uyemura* thus treated attorneys' fees not as incidental to an underlying suit, but as part of the damages incurred in the dispute itself.

Similarly, in *Fought*, one of the questions in the case was whether recovery of attorneys' fees should be allowed under HRS § 607–14, which allowed the taxing of attorneys' fees in assumpsit actions. *Id.* at 52, 951 P.2d at 502. The attorneys' fees in *Fought* was a head of the damages, i.e., part of the subject matter of the suit. *See id.* at 51, 951 P.2d at 501. Attorneys' fees in *Fought* were not, then, incidental to the un-

---

4. HRS § 661–1(1) waives sovereign immunity for, *inter alia*, "[a]ll claims against the State founded upon any statute of the State[.]" HRS § 661–1(1). *See Sierra Club II*, 120 Hawai'i at 226, 202 P.3d at 1271.

5. As noted in *Sierra Club II*, "[t]hrough HRS § 343–7, the legislature authorized judicial review of actions that can only be carried out by state agencies or political subdivisions of the State." 120 Hawai'i at 227, 202 P.3d at 1272.

derlying suit, as they are in this case. It was in this context that this court said in *Fought* that "an award of costs and fees to a prevailing party is inherently in the nature of a damage award." [6] *Id.* Consequently, the issue in *Fought* was the relationship between the relief requested in the underlying litigation and the award of attorneys' fees. *Id.* at 52, 951 P.2d at 502. This court concluded that fees were part of the subject matter of the underlying suit, such that "the *Uyemura* rule may be applied by appellate courts, as warranted, in taxing attorneys' fees and costs incurred on appeal." *Id.*

Further, the majority argues that "we have already expressly rejected this argument on a motion for attorneys' fees nearly indistinguishable from the instant one on the issue of sovereign immunity[,]" in *Taomae*. Majority's opinion at 172, 307 P.3d at 152. However, respectfully, *Taomae* is eminently distinguishable from this case, on the basis that here, the plaintiffs have demonstrated a valid claim for attorneys' fees under the private attorney general doctrine, while the plaintiffs in *Taomae* failed to do so, as *Taomae* expressly noted.

In *Taomae*, the plaintiffs had premised their claim for attorneys fees on several theories, including, *inter alia*, that HRS § 607–14.5 (Supp.2005) [7] authorized the court to award fees, and that "the court's inherent equitable power pursuant to HRS §§ 11–175 (1993) and 602–5(7) (1993) authorizes the

award of attorneys' fees and costs in this election case affecting the public interest[.]" 110 Hawai'i at 331, 132 P.3d at 1242. *Taomae* first held that the plaintiffs were not entitled to attorneys' fees under HRS § 607–14.5. *Id.* at 332, 132 P.3d at 1243.

Next, *Taomae* considered whether sovereign immunity barred recovery of fees by plaintiffs, with respect to both plaintiffs' requests for fees pursuant to HRS § 607–14.5 and pursuant to the "court's inherent powers" in HRS § 11–175 [8]. *Id.* at 332–33, 132 P.3d at 1243–44. This court held that the case before it was distinguishable from *Fought*, in that the matter did not implicate HRS §§ 607–14 or 661–1, and that, although the underlying case was not barred by sovereign immunity because the plaintiffs sought injunctive relief, that did "not necessarily result in a right to attorneys fees." *Taomae*, 110 Hawai'i at 333, 132 P.3d at 1244.

While *Taomae* has been cited for the proposition that a separate, specific waiver of sovereign immunity is required in order for a plaintiff to be entitled to attorneys' fees under the private attorney general doctrine, *see Sierra Club II*, 120 Hawai'i at 232, 202 P.3d at 1277 (Nakayama, J., dissenting), that precept is overly broad. Instead, *Taomae* stands for the proposition that an attorneys fees award cannot itself be derived from the fact that the State waived sovereign immunity over the underlying case. *See Taomae*, 110 Hawai'i at 333, 132 P.3d at 1244 ("[T]he

---

**6.** The majority contends that *Fought* cannot be read to support the holding that an award of fees and costs vested in the inherent equitable power of the court is incidental to the underlying suit. The majority focuses on the language in *Fought* stating that "taxation of costs and attorneys' fees is essentially an award of damages...." 87 Hawai'i at 52, 951 P.2d at 502. However, the majority takes this language out of context. *See* majority's opinion at 168 n. 4, 307 P.3d at 148 n. 4. As noted above, *Fought* expressly connected the award of attorneys' fees with the relief sought in the underlying action. When *Fought* stated that the attorneys' fees were in the nature of a damages award, it did so in enabling the plaintiffs to include attorneys' fees " 'as an element' " of their overall damages award—thus linking the attorneys' fees damages to the underlying request for relief in the form of damages. *See Fought*, 87

Hawai'i at 51, 951 P.2d at 501 (quoting *Uyemura*, 57 Haw. at 109, 551 P.2d at 176).

**7.** HRS § 607–14.5 provides, in pertinent part:
(a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party ... the court may, as it deems just, assess against either party ... a reasonable sum for attorneys' fees and costs, ... upon a specific finding that all or a portion of the party's claim or defense was frivolous....

**8.** HRS § 11–175 provides:
The supreme court may compel the attendance of witnesses, punish contempts, and do whatsoever else may be necessary fully to determine the proceedings, and enforce its decrees therein. The court may make such special rules as it may find necessary or proper. The costs shall be as provided by the supreme court by rule.

fact that sovereign immunity does not preclude this court from addressing the merits of this case does not necessarily result in a right to attorneys' fees.") (emphasis added).

However, here, unlike in *Taomae*, there is a right to attorneys' fees—premised on the private attorney general doctrine. The majority states that "[e]ven where the underlying suit for declaratory and injunctive relief for a constitutional violation is not precluded by sovereign immunity, there must exist some authorization for a shift in attorneys' fees, as those are in the nature of damages." Majority's opinion at 173, 307 P.3d at 153. In the instant case, that "authorization" exists in the form of the private attorney general doctrine. As noted, *Taomae* had found that no award was available under HRS § 607–14.5. 110 Hawai'i at 332, 132 P.3d at 1243. It was in this context that *Taomae* stated that an underlying waiver of sovereign immunity would not "necessarily result" in a right to attorneys fees. *Id.* at 333, 132 P.3d at 1244.

Further, although this court noted that the plaintiffs appeared to request fees under the private attorney general doctrine based on the cases cited in their reply memorandum, *Taomae* specifically denied the request for fees on those grounds, on the basis that it was not raised until the plaintiff's reply memorandum on appeal. *Id.* at 333 n. 14, 132 P.3d at 1244 n. 14 ("[The p]laintiffs' arguments that attorneys' fees should be awarded pursuant to . . . the private attorney general doctrine, [was] raised for the first time in their reply memorandum."). Thus, *Taomae*

never decided whether, where the right to fees was established by the plaintiffs under the private attorney general doctrine, a separate waiver of sovereign immunity was required.[9] Instead, it concluded that the waiver of sovereign immunity over the underlying claim did not result in an entitlement to attorneys' fees, where the plaintiffs had not based their request on any statute or properly raised the private attorney general doctrine or any other basis for attorneys' fees.[10]

Inasmuch as *Taomae*'s holding on sovereign immunity cited *Fought*, this court's opinion in *Fought* is discussed further, briefly. In *Fought*, sovereign immunity was waived for the underlying claim on the basis of HRS § 661–1(1), which expressly waived the State's immunity for actions "upon any contract, express or implied[.]" 87 Hawai'i at 56, 951 P.2d at 506. Construing HRS § 661–1(1), this court held that "[w]hen the State has consented to be sued, its liability is to be judged under the same principles as those governing the liability of private parties." *Id.* The award of attorneys' fees sought by plaintiffs was premised on a statute, HRS § 607–14, which allowed recovery of attorneys' fees for actions in the nature of assumpsit. *Id.* at 54, 951 P.2d at 504.

*Fought* noted that if there was "no clear waiver of the state's sovereign immunity from suit" in HRS § 661–1(1), then "the imposition of costs and attorneys' fees against the [government] would obviously be prohibited." *Id.* at 56, 951 P.2d at 506. This court further stated that HRS § 607–14 does not create a novel claim for relief, but "merely

---

9. In *Taomae*, the plaintiffs also apparently failed to argue until their reply memorandum that they were entitled to fees pursuant to this court's "inherent equitable power" under HRS §§ 11–175 and 602–5(7). *See* 110 Hawai'i at 333 n. 14, 132 P.3d at 1244 n. 14. Accordingly, *Taomae* did not decide whether this was a valid basis for attorneys' fees. Plaintiffs do not raise this basis for an attorneys' fees award in the instant case.

10. It is worth emphasizing that in *Taomae*, the issue was an entitlement to attorneys' fees in the first place, whereas here, the entitlement to attorneys' fees has already been settled, because the Plaintiffs satisfy the three prongs of the private attorney general doctrine. *See* majority's opinion at 166–68, 307 P.3d at 146–48. Contrary to the majority's assertion, *Taomae* did not

reject the argument that no waiver of sovereign immunity is required over imposition of fees and costs where sovereign immunity did not act as a bar to the underlying litigation, *see* majority's opinion at 173, 307 P.3d at 153. Instead, *Taomae* held that the plaintiffs failed to establish an entitlement to fees under HRS § 607–14.5, *Taomae*, 110 Hawai'i at 332, 132 P.3d at 1243, HRS § 602–5(7), HRS § 11–175 and the equitable powers of this court, or the private attorney general doctrine, *id.* at 333, 132 P.3d at 1244. Accordingly, a waiver of sovereign immunity over the underlying claim, in and of itself, could not establish an entitlement to fees either. *Id.* ("[S]imply because sovereign immunity did not bar the instant contest . . . it cannot be assumed that an assessment of fees and costs is appropriate.") (internal quotation marks omitted).

establishes the circumstances under which the prevailing party ... may recover the expenses of litigation ... [,]" and thus, "a further waiver of sovereign immunity is not neccessary." *Id.* (emphasis added). Thus, *Fought* held that, where there is a waiver of sovereign immunity over the underlying claim, in that case provided by HRS § 661–1(1), no additional express waiver of sovereign immunity is required in the provision allowing for recovery of attorneys' fees, in that case, HRS § 607–14.[11] *Id.*

In its discussion of waiver of sovereign immunity, *Taomae* distinguished itself from *Fought* on the basis that, in *Taomae*, "[the p]laintiffs [had] not demonstrated an entitlement to fees under *Fought*[,] [a]nd unlike in *Fought*, no statute authoriz[ed] a shift in fees...." *Taomae*, 110 Hawai'i at 333, 132 P.3d at 1244. Thus, reading *Fought* and *Taomae* together demonstrates that the issue decided by *Taomae* was whether a waiver of sovereign immunity over the underlying action somehow created a separate authorization for attorneys' fees, where the plaintiffs had not successfully argued a specific statutory provision or properly raised the private attorney general doctrine or any other basis for attorneys' fees.

In this case, in contrast, Plaintiffs have successfully argued that they can collect attorneys' fees pursuant to the private attorney general doctrine. *See* majority's opinion at 168, 307 P.3d at 148. The private attorney general doctrine operates to enable Plaintiffs

to request attorneys' fees, just as HRS § 607–14 operated in *Fought* to enable the plaintiffs to collect attorneys' fees. *See Fought*, 87 Hawai'i at 54, 951 P.2d at 504. Thus, just as the plaintiffs in *Fought* did not have to demonstrate a separate waiver of sovereign immunity in order for HRS § 607–14 to apply, Plaintiffs here should not have to demonstrate a waiver of sovereign immunity specifically over attorneys' fees because their underlying claims did not implicate sovereign immunity in the first instance.[12]

## B.

The award of attorneys' fees by a court under the private attorney general doctrine is grounded in the inherent equitable powers of the court. *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1315; *see also Waiahole II*, 96 Hawai'i at 29, 25 P.3d at 804 (stating that the private attorney general doctrine is one of the "equitable exceptions to the American Rule that 'each party is responsible for paying his or her own litigation expenses'") (quoting *Chun v. Board of Trustees of Employees' Retirement Sys.*, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000)). An award of fees and costs grounded in the inherent equitable power of the court is incidental to the underlying suit to which it is attached and thus cannot conceptually be denominated as in the nature of a separate damages award. *See Fought*, 87 Hawai'i at 51–52, 951 P.2d at 501–502.

---

11. This court undertook a similar analysis in *Sierra Club II*, and noted the parallels to *Fought*. *See Sierra Club II*, 120 Hawai'i at 226, 202 P.3d at 1271. In *Sierra Club II*, the plaintiffs premised their claim in the underlying action on HRS § 661–1(1) as in *Fought*, but on the section providing original jurisdiction in the courts for claims that are "'founded upon any statute of the State[.]'" *Id.* at 227, 202 P.3d at 1272 (quoting HRS § 661–1(1)). Since the plaintiff's claim was founded upon HRS § 343–7, this court also considered whether HRS § 343–7 contained a waiver of sovereign immunity. *Id.* As noted, *supra*, *Sierra Club II*'s analysis only considered whether there was a waiver of sovereign immunity over the underlying action, and this court did not undertake a separate analysis to determine whether there was a waiver of sovereign immunity over attorneys' fees. *See id.* at 226, 202 P.3d at 1271.

12. Contrary to the majority's discussion, I do not extend the holding in *Fought* with respect to HRS § 661–1 to cases involving constitutional violations. *See* majority's opinion at 172–73, 307 P.3d at 152–53. I agree that constitutional claims are not cognizable under HRS § 661–1. Majority's opinion at 172, 307 P.3d at 152. The conclusion that no separate waiver over fees is required is arrived at by analogy to *Fought*, rather than by extending *Fought's* HRS § 661–1 holding. In *Fought*, where sovereign immunity was waived pursuant to HRS § 661–1, there was no need to find an additional, separate waiver over recovery of attorneys' fees as allowed by HRS § 607–14. *Fought*, 87 Hawai'i at 56, 951 P.2d at 506. Similarly, where sovereign immunity is not at issue because the underlying claim is constitutional, there is no additional, separate waiver required to recover attorneys' fees as allowed under the private attorney general doctrine.

In setting forth the parameters of the private attorney general doctrine, this court has adopted the reasoning in *Serrano, see Waiahole II*, 96 Hawai'i at 29–30, 25 P.3d at 804–05 (extensively quoting the rationale from *Serrano* ); *Sierra Club II*, 120 Hawai'i at 219, 202 P.3d at 1264 (same), which stated that the purpose of the doctrine is to award attorneys' fees and costs " 'to the end that support may be provided for the representation of interests of similar character in future litigation.' " [13] *Waiahole II*, 96 Hawai'i at 30, 25 P.3d at 805 (quoting *Serrano*, 141 Cal. Rptr. 315, 569 P.2d at 1314). An award of fees, then, is in the nature of recompense for the financial burden that should have been otherwise borne by "the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public[,]" and which would have been expanded on behalf of the public, but for the fact that "for various reasons the burden of enforcement [was] not ... adequately carried by those offices and institutions, rendering some sort of private action imperative." *Id.* (quoting *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1313).

The application of the private attorney general doctrine is particularly apt here. In describing the rationale underlying the doctrine, *Serrano* stated that the theory "seeks to encourage the presentation of meritorious <u>constitutional claims</u> affecting large numbers of people[.]" 141 Cal.Rptr. 315, 569 P.2d at 1316 (emphasis added). *Serrano* itself only applied the private attorney general doctrine to litigation vindicating a public policy having "a constitutional basis[,]" and did not consider the question of whether courts could award fees under the doctrine where the litigation "vindicated a public policy having a statutory ... basis." *Id.*, 141 Cal.Rptr. 315, 569 P.2d at 1315. Constitutional claims are singularly the type of claim that would satisfy the requirements of the doctrine in the first place, by providing the type of "benefits of a conceptual or doctrinal character which are shared by the state as a whole." *Id.*, 141 Cal.Rptr. 315, 569 P.2d at 1312.

Such fees and costs are incidental to actions which are not barred by sovereign immunity. Logically, then, fees and costs should enjoy the same treatment as the actions that could not otherwise have been prosecuted in the absence of such expenditures.

### III.

### A.

Where the State's sovereign immunity does not bar the underlying action because it presents a constitutional claim, *see Kaho'ohanohano*, 114 Hawai'i at 337, 162 P.3d at 731 ("[S]overeign immunity will not be a bar where governmental action is challenged as unconstitutional.") (citation omitted), there is no requirement of a separate waiver of sovereign immunity over attorneys' fees. It would be inconsistent with *Kaho'ohanohano* to hold that awarding attorneys' fees requires a relinquishment of the sovereign immunity defense, when the underlying suit which gave rise to attorneys' fees in the first place, and presumably could not have proceeded without the expenditure of such fees and costs, does not admit of the defense.[14] As the

---

**13.** It is implicit from the arguments in favor of the private attorney general doctrine, as set forth in *Serrano* and reiterated by this court in *Waiahole II*, that the <u>purpose</u> of the doctrine is not to assess damages, but to ensure that certain types of interests, of " enormous significance to the society as a whole' " are vindicated in court. *Waiahole II*, 96 Hawai'i at 30, 25 P.3d at 805 (quoting *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1313). The private attorney general doctrine serves to encourage representation for causes that " 'do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts.' " *Id.* (quoting *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1313).

**14.** The majority states that *"Kaho'ohanohano* held only that sovereign immunity is no defense against a claim for declaratory and injunctive relief concerning an act of the legislature that allegedly violated the Hawai'i Constitution[,]" and that attorneys' fees were not at issue. Majority's opinion at 173, 307 P.3d at 153. However, it is precisely because *Kaho'ohanohano* holds that there is no need for an express waiver of sovereign immunity over constitutional claims for injunctive relief that no express waiver is required over an award of attorneys' fees garnered in validating those claims. To require a separate express waiver over an attorneys' fee award would, in effect, be contrary to the propo-

majority notes, "at their core, and as asserted in their First Amended Complaint, Plaintiffs' claims were about [a] violation of ... constitutional duties under Article XII, Section 1." Majority's opinion at 171, 307 P.3d at 151. Thus, the claims in the underlying case were based on a constitutional violation, for which no waiver of sovereign immunity is required.[15] *See Kaho'ohanohano*, 114 Hawai'i at 337, 162 P.3d at 731; *see also Pele Defense Fund*, 73 Haw. at 607, 837 P.2d at 1265 ("[S]overeign immunity may not be invoked as a defense by state officials who comprise an executive department of government when their action is attacked as being unconstitutional.") (citation omitted).

As discussed, the rationale underlying the attorney general doctrine was adopted from *Serrano*, in which the public policy advocated was "grounded in the [California] state Constitution." *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1315. Thus it was in the context of a constitutional claim that the *Serrano* court upheld the grant of attorneys' fees based on the private attorney general doctrine, pursuant to the inherent equitable power of the courts. *Id.* As this court stated in *Waiahole II*, "the purpose of the doctrine is to promote vindication of important public rights[,]" through this inherent equitable power. 96 Hawai'i at 29–30, 25 P.3d at 804–05. There are no rights more important than those protected by the Hawai'i Constitution. Accordingly, it is manifestly within the power of this court to award attorneys' fees pursuant to the private attorney general doctrine

where the underlying claim is a constitutional one, without requiring a separate waiver of sovereign immunity for the fees themselves.

### B.

This court's recent decision in *Kaleikini v. Yoshioka*, 129 Hawai'i 454, 457–58, 304 P.3d 252, 255–56 (2013) (*Kaleikini II*), seems to indicate that, with respect to sovereign immunity, an additional plain language waiver of sovereign immunity for attorneys' fees is required to recover fees for any constitutional claim. However, that case is distinguishable from the facts in the instant case, inasmuch as the plaintiff in *Kaleikini II* did not bring a claim in the underlying action for a constitutional violation, but rather, only relied on art. XI, section 9 of the Hawai'i constitution with respect to her request for attorneys' fees pursuant to the private attorney general doctrine. *See Kaleikini v. Yoshioka*, 128 Hawai'i 53, 60, 283 P.3d 60, 67 (2012) (*Kaleikini I*). In *Kaleikini II*, the plaintiff alleged that there was a waiver of sovereign immunity over her request for attorneys' fees because, pursuant to *County of Hawai'i v. Ala Loop Homeowners*, there is "an implied private right of action in article XI, section 9 to enforce the provisions of HRS chapter 205 and other 'laws relating to environmental quality.'" *Id.* at 468, 304 P.3d at 266 (citing *Ala Loop Homeowners*, 123 Hawai'i 391, 409–17, 235 P.3d 1103, 1121–29 (2010)). In analyzing this argument, *Kaleik-*

sition that sovereign immunity is waived over the constitutional claims themselves.

The majority also characterizes this opinion as stating that "an entitlement to fees follows" where "the underlying action is not barred by sovereign immunity." Majority's opinion at 172, 307 P.3d at 152. Respectfully, this is inaccurate. I would hold only that, where the underlying action is not barred by sovereign immunity, and there is an entitlement to attorneys' fees <u>established through statute or the private attorney general doctrine,</u> as in the instant case, sovereign immunity will not be a bar to the award of fees.

15. Respectfully, the majority merges the statutory and constitutional waivers of sovereign immunity. *See* majority's opinion at 172, 307 P.3d at 152. With respect to claims founded upon statute, I rely on *Fought*, 87 Hawai'i at 56, 951 P.2d at 506, for the proposition that no separate waiv-

er over attorneys' fees is required where there was a waiver of sovereign immunity over the underlying claim. With respect to constitutional claims, I rely on *Kaho'ohanohano*'s holding that there is no requirement for a waiver of sovereign immunity over constitutional claims, and conclude that, relying on the inherent equitable powers of the court in granting attorneys' fees, *see Waiahole II*, 96 Hawai'i at 29, 25 P.3d at 804, no separate waiver of sovereign immunity is required over an attorneys' fees award. <u>The waiver of sovereign immunity over constitutional claims is therefore separate and apart from any waiver of sovereign immunity pursuant to HRS § 661.</u> *See Pele Defense Fund*, 73 Haw. at 607, 837 P.2d at 1265 ("[S]overeign immunity may not be invoked as a defense by state officials who comprise an executive department of government when their action is attacked as being unconstitutional.") (citation omitted).

*ini II* noted, *inter alia,* that "it is not apparent that article XI, section 9 applies to [plaintiff's] claims." *Id.*

Thus, when *Kaleikini II* reasoned that "[f]inally, nothing in the plain language of article XI, section 9 clearly relinquishes the State's sovereign immunity with respect to attorney's fees[,]" *id.,* it did so in dicta, since the constitutional provisions were not raised by the plaintiff in the underlying litigation, *see Kaleikini I,* 128 Hawai'i at 60, 283 P.3d at 67. Therefore, this court's reasoning in *Kaleikini II* is not applicable in the instant case, where Plaintiffs' claim in the underlying action was premised on the Hawai'i constitution. There being no separate waiver of sovereign immunity required to obtain attorneys' fees where sovereign immunity does not bar the underlying claim, Plaintiffs therefore may recover attorneys' fees under the private attorney general doctrine.

## IV.

Plaintiffs also premise their request for attorneys' fees in the instant case on a statutory waiver of sovereign immunity pursuant to HRS § 661–1 (for "[a]ll claims against the State founded upon any statute of the State") and HRS chapter 632, inasmuch as they sought declaratory and injunctive relief in

the underlying action. *See* majority's opinion at 169–70, 307 P.3d at 149–50. In the underlying case, in addition to the constitutional nature of Plaintiffs' allegations, Plaintiffs were also able to bring an action because, as noted, "actions seeking prospective relief" (i.e., injunctions) do not implicate the State's sovereign immunity. *See Sierra Club II,* 120 Hawai'i at 226, 202 P.3d at 1271 (citation omitted). However, since I would hold that Plaintiffs may recover attorneys' fees because there is no sovereign immunity defense based on the constitutional nature of Plaintiffs' underlying claims, the outcome does not depend on whether the statutory waiver of sovereign immunity Plaintiffs allege would also allow for recovery of attorneys' fees.

A waiver of sovereign immunity separate from the underlying claim is not necessary under this court's prior jurisprudence, as discussed *supra,* whether the waiver is founded on statute, *see Fought,* 87 Hawai'i at 56, 951 P.2d at 506, or the claim is founded on a constitutional provision, *see Kaho'ohanohano,* 114 Hawai'i at 337, 162 P.3d at 731. In this case, Plaintiffs allege, inter alia,[16] that HRS § 661–1(1)'s waiver of sovereign immunity applies, and that their claims are "founded on" HRS chapter 632 (1993) [17]. The majority

16. I do not address Plaintiffs' other argument that Chapter 673 (1993) provides a waiver of the State's sovereign immunity for attorneys' fees, because I agree with the majority that Plaintiffs' claims in the underlying action were not premised on HRS Chapter 673. *See* majority's opinion at 170–71, 307 P.3d at 150–51.

17. HRS § 632–1 provides:

In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

concludes that "the instant case does not implicate HRS § 661–1 or any statutory waiver of sovereign immunity[,]" because the plaintiff's claim was brought pursuant to HRS § Chapter 632.[18] Majority's opinion at 169, 307 P.3d at 149. The majority would distinguish the instant case from *Fought* and *Sierra Club II* on the basis that those cases "would allow attorneys' fees awards based upon waivers of sovereign immunity over the underlying claims[,]" majority's opinion at 170, 307 P.3d at 150 (emphasis added), and that, in contrast, " '[w]here a party seeks only injunctive relief, the ability to sue the state does not stem from a waiver of sovereign immunity, but from the fact that sovereign immunity does not bar the suit in the first place[,]' " majority's opinion at 169–70, 307 P.3d at 149–50 (quoting *Sierra Club II*, 120 Hawai'i at 229 n. 30, 202 P.3d at 1274 n. 30).

However, the award of attorneys' fees should not be governed by a distinction between "waiver" of sovereign immunity and "inapplicability" of sovereign immunity; in either case, sovereign immunity is not a bar to the underlying action and should therefore not be a bar to an award of attorneys' fees. If sovereign immunity is waived, then it is also waived over the attorneys' fees award. *See Sierra Club II*, 120 Hawai'i at 229, 202 P.3d at 1274; *Fought*, 87 Hawai'i at 56, 951 P.2d at 506. If a particular claim falls within an "exception" to sovereign immunity, because it seeks injunctive relief, *Sierra Club II*, 120 Hawai'i at 226, 202 P.3d at 1271, then there is similarly no need for a waiver of sovereign immunity over an award of attorneys' fees, since it never applied to the underlying claim in the first place. In other words, if sovereign immunity does not even apply to particular types of actions, then there should be no waiver of sovereign immunity required in order to recover attorneys' fees for those underlying actions. *See Pele Defense Fund*, 73 Haw. at 609–10, 837

P.2d at 1266 ("If the relief sought against a state official is prospective in nature, then the relief may be allowed regardless of the state's sovereign immunity.") (emphasis added).

V.

In sum, because Plaintiffs' constitutional claims in the underlying action did not implicate the State's sovereign immunity, their claims for an award of attorneys' fees under the private attorney general doctrine should not require a separate waiver of sovereign immunity. Where sovereign immunity does not bar the underlying litigation, an award of attorneys' fees arising from such litigation will similarly not be barred by sovereign immunity. Accordingly, having concluded, as the majority does, that Plaintiffs met each prong of the three-part private attorney general doctrine, I would award Plaintiffs reasonable attorneys' fees in this case.

---

18. The majority's holding in this case would effectively preclude recovery of attorneys' fees from the State pursuant to the private attorney general doctrine in every case where the plaintiffs' underlying claims are premised on HRS Chapter 632. In the majority's view, since claims brought pursuant to HRS Chapter 632 do not technically require a "waiver" of the State's sovereign immunity, no "waiver" of sovereign immunity can ever be imputed to attorneys' fees for these claims. *See* majority's opinion at 169–70, 307 P.3d at 149–50. But, if the underlying claims brought under HRS Chapter 632 do not implicate sovereign immunity in the first instance, then no separate waiver over an attorneys' fees award should be mandated.