**FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000382
12-FEB-2025
08:03 AM
Dkt. 133 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---o0o---

RICHARD NELSON III, KALIKO CHUN, JAMES AKIONA, SR.,
SHERILYN ADAMS, KELII IOANE, JR., and CHARLES AIPIA,
Plaintiffs-Appellees/Cross-Appellants, v.
HAWAIIAN HOMES COMMISSION, THE DEPARTMENT OF HAWAIIAN HOME
LANDS, KALI WATSON, in his official capacity as
Chair of the Hawaiian Homes Commission,[1]
SANOE MARFIL, WALT KANEAKUA, ARCHIE KALEPA, PAULINE NAMU‘O,
LAWRENCE LASUA, DENNIS NEVES, MICHAEL KALEIKINI,
and MAKAI FREITAS, in their official capacities as members of
the Hawaiian Homes Commission,[2] Defendants-Appellants/Cross-
Appellees, and LUIS P. SALAVERIA, in his official capacity
as the State Director of Finance,[3] and the STATE OF HAWAI‘I,
Defendants-Appellees/Cross-Appellees.

---

[1] Pursuant to Hawai‘i Rules of Evidence (**HRE**) Rule 201 and Hawai‘i Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), we take judicial notice that Kali Watson is the current Chair of the Hawaiian Homes Commission and is automatically substituted as a Defendant-Appellant/Cross-Appellee in place of William Aila, Jr.

[2] Pursuant to HRE Rule 201 and HRAP Rule 43(c)(1), we take judicial notice that Sanoe Marfil, Walt Kaneakua, Archie Kalepa, Lawrence Lasua, and Makai Freitas are current members of the Hawaiian Homes Commission and they are automatically substituted as Defendants-Appellants/Cross-Appellees in place of Patricia Kahanamoku-Teruya, Randy Awo, Zachery Helm, David B. Ka‘apu, and Russell Kaupu.

[3] Pursuant to HRE Rule 201 and HRAP Rule 43(c)(1), we take judicial notice that Luis P. Salaveria is the current Director of Finance and is automatically substituted as a Defendant-Appellee/Cross-Appellee in place of Craig Hirai.

NO. CAAP-21-0000382

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC071001663)

FEBRUARY 12, 2025

HIRAOKA, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

OPINION OF THE COURT BY MCCULLEN, J.

The litigation in this case began almost eighteen years ago when **Plaintiffs**-Appellees/Cross-Appellants Richard Nelson III et al., beneficiaries of the Hawaiian Homes Commission Act (**HHCA**), sued the Defendants-Appellees/Cross-Appellees State of Hawaiʻi and its director of finance (collectively, **State**) and Defendants-Appellants/Cross-Appellees the Department of Hawaiian Home Lands, the Hawaiian Homes Commission, and its commissioners (collectively, **Department** or **DHHL**).

In their 2007 "First Amended Complaint for Declaratory Judgment and Injunctive Relief" (**2007 First Amended Complaint**), Plaintiffs claimed the State did not provide (Count 1), and DHHL did not request (Count 2), sufficient funding to support the HHCA's programs resulting in thousands of native Hawaiians waiting for promised homesteads. This case is now on appeal for

2

the third time following the selection of an inflation index and its application to the fiscal year (or **FY**) 2015-2016.

We hold the Circuit Court of the First Circuit[4] did not err in its selection and application of an inflation index. But we also hold the circuit court erred in entering judgment in favor of the State on Count 1 and in favor of DHHL on Count 2 of the 2007 First Amended Complaint based on its findings for fiscal year 2015-2016.

## I. BACKGROUND

The background of this case was recounted in <u>Nelson v. Hawaiian Homes Commission</u> (<u>Nelson I</u>), 127 Hawaiʻi 185, 277 P.3d 279, (2012); <u>Nelson v. Hawaiian Homes Commission</u> (<u>Nelson II</u>), 130 Hawaiʻi 162, 307 P.3d 142 (2013); and <u>Nelson v. Hawaiian Homes Commission</u> (<u>Nelson III</u>), 141 Hawaiʻi 411, 412 P.3d 917 (2018). We provide historical and procedural context as related to the issues currently on appeal.

## A. Historical Context

Congress enacted the HHCA to protect and rehabilitate the "fast declining" native Hawaiian population. 59 Cong. Rec. 7448 (1920). By dedicating over 200,000 acres of former government and crown lands for a homesteading program, Congress hoped to "place the Hawaiian back on the soil" and thereby avert

---

[4] The Honorable Jeffrey P. Crabtree presided. Other circuit court judges presided over the previous remands.

"the entire disappearance of the Hawaiian race in the not distant future."  59 Cong. Rec. at 7448-7449, 7453; 1995 Haw. Spec. Sess. Laws Act 14, § 1 at 696.

The HHCA was later incorporated into the state constitution as a condition of statehood.  Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (1959), reprinted in 1 Hawaiʻi Revised Statutes at 135–36 (2009).

Cognizant of DHHL's "*monumental and eternal dilemma in funding*[,]" delegates to the 1978 Constitutional Convention (**ConCon**) introduced, and Hawaiʻi voters ratified, an amendment requiring the legislature to "make sufficient sums available for . . . the administration and operating budget of the department of Hawaiian home lands[.]"  Nelson I, 127 Hawaiʻi at 189, 198-99, 277 P.3d at 283, 292-93 (some emphasis omitted; internal quotation marks omitted) quoting Debates in Committee of the Whole on Hawaiian Affairs, Comm. Prop. No. 11, in 2 Proceedings of the Constitutional Convention of Hawaiʻi of 1978 (2 Proceedings), at 410 (1980)).

As a result, our state constitution now requires the legislature to "make sufficient funds available" for four specific purposes including, as relevant to this appeal, DHHL's administration and operating budget:

4

> The legislature <u>shall make sufficient sums available for</u> the following purposes: (1) development of home, agriculture, farm and ranch lots; (2) home, agriculture, aquaculture, farm and ranch loans; (3) rehabilitation projects to include, but not limited to, educational, economic, political, social and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved; (4) <u>the administration and operating budget of the department of Hawaiian home lands</u>; in furtherance of (1), (2), (3), and (4) herein, by appropriating the same in the manner provided by law.

Haw. Const. art. XII, § 1 (emphases added); <u>Nelson I</u>, 127 Hawaiʻi at 189, 277 P.3d at 283.  Our supreme court noted that despite this constitutional mandate, "the State has failed, by any reasonable measure, under the undisputed facts, to provide sufficient funding to DHHL[.]"  <u>Nelson I</u>, 127 Hawaiʻi at 205, 277 P.3d at 299.

**B.    Proceedings Related to <u>Nelson I</u>**

**1.    The 2007 First Amended Complaint**

Plaintiffs' 2007 First Amended Complaint[5] sought "redress for the failure of this State and agencies of the State to live up to their solemn trust obligations pursuant to the [HHCA] and Article XII § 1 of the Hawaiʻi State Constitution."

Count 1 claimed in part that DHHL "does not <u>currently</u> receive sufficient funds for . . . (4) the administration and operating budget of the [DHHL.]"  (Emphasis added.)

---

[5]  The 2007 First Amended Complaint included Counts 3 and 4, but the parties stipulated to dismiss Count 3 without prejudice and Count 4 with prejudice.

Count 2, by realleging Count 1's allegations, claimed in part that the "state administration fails to <u>annually</u> request 'sufficient sums' for the administration and operating budget of the [DHHL] to assure that . . . all programs of the department prescribed under Article XII, § 1 are adequately funded." (Emphasis added.)

Plaintiffs sought a declaratory order, injunctive relief, appointment of a special master, attorneys' fees and costs, and other relief the circuit court deemed proper.

The State moved for summary judgment arguing "[a]ny claim that the Hawaiʻi Legislature has an obligation under Article XII, Sections 1 & 2, of the [Hawaiʻi] Constitution to provide a certain level of money to DHHL is barred by the Political Question Doctrine."[6]  (Formatting altered.)  The circuit court granted the State's motion.

Plaintiffs appealed.

## 2. **Intermediate Court of Appeals' (ICA) Decision (2011)**

In order to decide "whether the 1978 constitutional amendment requiring sufficient funding of DHHL [was] a political question," this court applied the six-factor test in <u>Trustees of the Office of Hawaiian Affairs v. Yamasaki</u>, 69 Haw. 154, 737

---

[6]  The political question "doctrine is the result of the balance courts must strike in preserving separation of powers yet providing a check upon the other two branches of government." <u>Nelson I</u>, 127 Hawaiʻi at 194, 277 P.3d at 288.

P.2d 446 (1987), "to the intent of the delegates to the 1978 Constitutional Convention." Nelson v. Hawaiian Homes Comm'n (Nelson), 124 Hawaiʻi 437, 442, 444, 246 P.3d 369, 374, 376 (App. 2011).

Ultimately, this court concluded that none of the six factors indicating a political question were present and the "question of the legislature making sufficient sums available to the DHHL is justiciable and therefore not a political question." Id. at 447, 246 P.3d at 379.

This court then vacated the circuit court's final judgment and remanded the case for further proceedings. Id.

The State filed an application for a writ of certiorari.

3. **Nelson I (2012) - Hawaiʻi Supreme Court's Decision Regarding the Political Question Doctrine**

On certiorari, the supreme court affirmed this court's judgment but only as to "what constitutes 'sufficient sums' for DHHL's administrative and operating expenses[,]" not the other three purposes. Nelson I, 127 Hawaiʻi at 188, 206, 277 P.3d at 282, 300. In particular, the supreme court recounted the delegates' detailed explanations "as to how administrative and operating costs were allocated" and concluded that, "by the end of the Committee on the Whole Debates, what was certain was that the $1.3 to $1.6 [million] figure represented 'sufficient sums'

7

for administrative and operating expenses only." Nelson I, 127 Hawaiʻi at 200, 202–03, 277 P.3d at 294, 296–97.

As a result, the supreme court held that "the 1978 Constitutional Convention history does provide judicially discoverable and manageable standards that do not involve initial policy determinations of a kind clearly for nonjudicial discretion." Nelson I, 127 Hawaiʻi at 203, 277 P.3d at 297. "At a minimum, funding at or above the $1.3 to $1.6 million envisioned in 1978 would be required." Id. (footnote omitted). But, the court explained, "this figure could be adjusted to reflect the impact of factors such as inflation or increased collective bargaining costs, both of which were acknowledged by [a delegate] as factors that could appropriately be taken into account in determining the required contribution." Nelson I, 127 Hawaiʻi at 203 n.8, 277 P.3d at 297 n.8 (emphasis added).

In short, the supreme court affirmed this court's judgment (which vacated the circuit court's judgment) "but only on the narrower ground that the determination of what constitutes 'sufficient sums' for administrative and operating expenses under the Hawaiʻi Constitution's Article XII, Section 1 [(adopting the HHCA)] is justiciable and not barred as a political question." Nelson I, 127 Hawaiʻi at 206, 277 P.3d at 300.

In a footnote, the supreme court explained that only Count 1 of the 2007 First Amended Complaint was at issue because DHHL did not apply for a writ of certiorari as to Count 2. Nelson I, 127 Hawaiʻi at 191 n.4, 277 P.3d at 285 n.4. "As a practical matter, however, the ICA's judgment vacated the entire circuit court judgment and remanded the entire case for a decision on the merits, which reopened all the Counts." Id.

**C. Nelson II (2013) - Hawaiʻi Supreme Court's Decision Regarding Attorneys' Fees and Costs**

Briefly, in Nelson II, the supreme court considered whether Plaintiffs were entitled to an award of attorneys' fees and costs pursuant to the private attorney general doctrine as they prevailed in Nelson I. Nelson II, 130 Hawaiʻi at 165, 307 P.3d at 145. Although the supreme court denied the request for attorneys' fees (without prejudice), the supreme court clarified that Plaintiffs prevailed in Nelson I because their claim(s) against the State survived. Nelson II, 130 Hawaiʻi at 166, 307 P.3d at 146.

**D. Proceedings Related to Nelson III**

**1. On Remand to Circuit Court (2014-2016)**

On remand, the circuit court held a bench trial on Counts 1 and 2 of the 2007 First Amended Complaint. The circuit court heard testimony from nine witnesses and received 239 exhibits into evidence.

In its November 27, 2015 Findings of Fact, Conclusions of Law, and Order, the circuit court found that the State appropriated less funds than requested:

> In each fiscal year since 1992, the State has appropriated to DHHL less in general funds than what DHHL requested to be appropriated for its administrative and operating costs:

| | Amount Requested: | Amount of General Funds Appropriated: |
|---|---|---|
| 1991-92: | 5,111,453 | 4,278,706 |
| 1992-93: | 5,079,006 | 3,850,727 |
| 1993-94: | 5,569,607 | 3,251,162 |
| 1994-95: | 5,609,683 | 3,251,162 |
| 1995-96: | 6,178,421 | 2,565,951 |
| 1996-97: | 6,222,903 | 1,569,838 |
| 1997-98: | 6,944,784 | 1,493,016 |
| 1998-99: | 7,710,784 | 1,347,684 |
| 1999-00: | 7,120,905 | 1,298,554 |
| 2000-01: | 7,120,905 | 1,298,554 |
| 2001-02: | 7,373,104 | 1,359,546 |
| 2002-03: | 7,373,104 | 1,196,452 |
| 2003-04: | 8,890,352 | 1,297,007 |
| 2004-05: | 8,947,595 | 1,277,007 |
| 2005-06: | 9,129,838 | 817,559 |
| 2006-07: | 9,129,838 | 1,067,559 |
| 2007-08: | 10,966,821 | 1,169,174 |
| 2008-09: | 11,522,092 | 883,669 |
| 2009-10: | 19,603,754 | 0 |
| 2010-11: | 19,603,754 | 0 |
| 2011-12: | 20,122,220 | 0 |
| 2012-13: | 20,122,220 | 0 |
| 2013-14: | 25,727,315 | 9,632,000 |
| 2014-15: | 27,122,825 | 9,632,000 |
| 2015-16: | 28,478,966 | 9,632,000 |

And "between and including fiscal years 1992 and 2013," DHHL's "own funding requests to the legislature were for less than DHHL determined that it needed." The circuit court also found that "[s]ince 1978, the legislature has not appropriated enough general funds to pay for DHHL's administrative and operating expense[s]."

The circuit court then contemplated "DHHL's actual administrative and operating budget expenses" and DHHL's projections for then-current fiscal year 2015-2016. In total, the court determined DHHL needed more than $28 million for its fiscal year 2015-2016 administrative and operating budget.

In its "Order Amending Order Issued November 27, 2015[,]" the circuit court determined that "the amount of general funds appropriated to DHHL for its administrative and operating budget for fiscal year 2015-16 ($9,632,000) [was] not sufficient."

The circuit court entered the May 31, 2016 First Amended Final Judgment in favor of Plaintiffs and against the State as to Count 1 and in favor of Plaintiffs and against DHHL as to Count 2.

The State appealed, and Plaintiffs cross-appealed. DHHL applied for transfer to the supreme court, which was accepted.

2.   **Nelson III (2018) - Hawaiʻi Supreme Court's Decision Regarding Actual Needs**

The supreme court vacated the circuit court's decision because it exceeded Nelson I's mandate by determining DHHL's actual need for its administrative and operating expenses. Nelson III, 141 Hawaiʻi at 413, 412 P.3d at 919.

11

More specifically, the supreme court held "the circuit court erred by engaging in a comprehensive inquiry into the amount DHHL actually needed for its administrative and operating expenses." Nelson III, 141 Hawai'i at 412, 412 P.3d at 918. Rather, "[u]nder Nelson I, the only judicially discoverable and manageable standard for determining 'sufficient sums' for DHHL's administrative and operating budget was established by the delegates of the 1978 Constitutional Convention as $1.3 to 1.6 million, adjusted for inflation." Id. (citation omitted).

The supreme court announced in three different places in its opinion that it vacated the circuit court's judgments and underlying orders and remanded the case for further proceedings and to determine sufficient sums for fiscal year 2015-2016:

- "we vacate the circuit court's First Amended Final Judgment, Final Judgment, and underlying orders, and remand this case to the circuit court to determine the current value of $1.3 to 1.6 million (in 1978 dollars), adjusted for inflation[,]" Id. at 413, 412 P.3d at 919;

- "we vacate the circuit court's First Amended Final Judgment, Final Judgment, and underlying orders. This case is remanded to the circuit court for further proceedings. On remand, the circuit court shall determine whether the State Defendants have provided 'sufficient sums' for DHHL's administrative and operating budget using the only judicially discoverable and

12

> manageable standard identified in Nelson I:
> the 1978 baseline of $1.3 to 1.6 million,
> adjusted for inflation[,]" Id. at 422, 412 P.3d
> at 928; and
>
> - "the circuit court's First Amended Final
>   Judgment, Final Judgment, and underlying orders
>   are vacated, and this case is remanded to the
>   circuit court to determine whether the State
>   Defendants have provided 'sufficient sums' for
>   DHHL's administrative and operating budget for
>   the 2015-2016 fiscal year using the only
>   judicially discoverable and manageable standard
>   identified in Nelson I: the 1978 baseline of
>   $1.3 to 1.6 million, adjusted for inflation."
>   Id.

The supreme court then entered its judgment, vacating the circuit court's judgments and underlying order and remanding the case for further proceedings consistent with its opinion:

> - "the Circuit Court of the First Circuit's
>   ('circuit court') First Amended Final Judgment,
>   Final Judgment, and underlying order are
>   vacated, and the case is remanded to the
>   circuit court for further proceedings
>   consistent with the opinion."

## E.    Proceedings Related to This Appeal

### 1.    Pre-Hearing Motions

On remand to the circuit court, the State moved for summary judgment, which the circuit court denied.  DHHL moved to

13

set the inflation rate at eight percent annually, or alternatively, to hold an evidentiary hearing; the circuit court granted DHHL's motion to the extent it requested an evidentiary hearing.

And Plaintiffs moved the court for "a final determination to resolve count 1 of [P]laintiffs' Complaint filed in 2007." Plaintiffs reiterated that their 2007 First Amended Complaint "did not ask for a determination as to exactly how much money would be sufficient for the Department[.]" Instead, they "specifically asked for 'a Declaratory Order that . . . [t]he State of Hawaiʻi has failed to provide sufficient funds to the Department . . . in violation of [its] constitutional duty to do so[.]" (Emphasis omitted.)

The circuit court denied Plaintiffs' motion for a determination as to Count 1. The circuit court explained it understood Plaintiffs' "argument that Count 1 was never about a single year and [that] this court should therefore determine and add up amounts for the administrative and operating budgets for all the years at issue and find that Plaintiffs prevailed[.]" The circuit court, however, noted "the remand order specifically direct[ed] [it] to determine the administrative and operating budget for the 2015-2016 fiscal year by using the 1978 baseline of $1.3 to $1.6 million, adjusted for inflation." The court explained it was "first [going to] follow the remand order[,]"

and the "form of any Final Judgment issued by [the] court [would] be determined at the end of the remanded proceedings[.]"

## 2. Evidentiary Hearing

The evidentiary hearing focused on the inflation index the circuit court should apply to adjust $1.3 to $1.6 million in 1978 dollars to 2015-2016 dollars.

Two threshold matters shaped the court's analysis. First, the court distinguished "between *inflation* (price changes over time for the same or similar goods and services) versus *growth of costs* (adding services and employees over time increases the budget baseline, which in turn changes over time due to inflation)." Because the court understood Nelson III's instruction as precluding "any evidence of cost increases above the 1978 baseline(s) resulting from growth as opposed to inflation[,]" it "focused on determining inflation based on the same or similar costs, and not determining inflation to include growth of goods and services."

Second, the court declined to "determine what inflation rate or index the ConCon estimated and applied in 1978 and then apply it for the period 1978 to [fiscal year] 2016." Although "the court agree[d] there is reason to believe the ConCon was referring to the [Consumer Price Index or] CPI[,]" it noted "the remand order does not require that only the CPI be used to adjust for inflation from 1978 to FY 2016." Instead,

the court interpreted its task as "a fact-based economics and math exercise" in which it was to "make a factual determination of what a 1978 budget actually costs in 2016 due to inflation" using the best available tool.  It said it was "not aware of any applicable law precluding it from using all available and admissible evidence to solve this exercise as accurately as possible."

Over two days, the circuit court heard testimony from three expert witnesses "in the field of economics, including how to adjust for inflation."  Although the experts generally agreed "adjusting for inflation involves tracking changes in prices over time[,]" they each testified to "different ways to adjust for inflation."

First, the State's expert testified the U.S. Department of Labor's Consumer Price Index was the best method to adjust the 1978 baseline for inflation because it "is the most widely used method to track inflation, particularly for economic analysis and policy-making."  The CPI "measures changes in the prices of goods and services for consumers: namely, goods and services bought and consumed by individuals, families, and households."  (Emphasis omitted.)  The Honolulu CPI, for example, tracks "categories includ[ing] food, cars, gas, housing, furniture, medical costs, education, travel, electricity, and other consumer-oriented items."  Moreover, the

State inferred that the "excerpts from the 1978 Constitutional Convention which referred to an 8% inflation" may have been referring to the CPI because eight percent was "approximately the inflation rate per the CPI then."

Next, the Department's expert testified the court should apply the U.S. Bureau of Labor Statistics' Employment Cost Index for State and Local Government (**ECI**) because it "tracks the compensation of state and local government employees over time" and DHHL's largest expense continues to be "personnel costs, including salaries and fringe benefits."

Last, Plaintiffs' expert testified the court should apply the State and Local Government Consumption Expenditures Price Index (**SLGC**) which "tracks price changes for government goods and services and specifically adjusts for increased costs due to government growth" by separating "out these quantitative effects of the increase in the size of government from any price effects." "Unlike the ECI, the SLGC also includes moneys that state and local governments spend for office equipment, materials, supplies, and services, including salaries."

### 3.    Findings and Conclusions

In its December 18, 2020 Findings of Fact, Conclusions of Law, and Order, the circuit court found the SLGC was the "better tool" to measure inflation. The court explained that "the SLGC [was] better than a CPI (both U.S. and Honolulu)

because . . . the two CPI indexes focus on consumer costs, which simply do not reflect the costs of government agencies."  It also found "the SLGC [was] better than ECI, which [was] limited to employee salaries and benefits."

Applying the SLGC index for inflation, the court adopted $5,810,065.00 and $7,150,850.00 in fiscal year 2015-2016 dollars as the adjusted amounts for the 1978 baseline of $1.3 and $1.6 million, respectively.

It then found there was "no dispute that the Legislature appropriated over $17 million in general funds for DHHL's administrative and operating budget for fiscal year 2016[.]"  In fact, the "actual appropriation of over $17 million exceeds by far every expert opinion offered post-remand[.]"  "No matter which inflation index this court may have selected from the experts and evidence presented, a single conclusion is required: 'sufficient sums' were provided."[7]

The court thus determined "that by appropriating over $17 million for FY 2016, the State Defendants provided 'sufficient sums' for DHHL's administrative and operating budget for the 2015-2016 fiscal year[.]"

---

[7] We note the parties do not appeal from the circuit court's determination that sufficient sums were provided for fiscal year 2015-2016.

### 4. Plaintiffs' Motion for Summary Judgment

Plaintiffs moved for summary judgment as to Count 1, arguing they were "entitled to summary judgment and a declaratory order that the State of Hawaiʻi failed to provide sufficient funds to the [DHHL] in violation of its constitutional duty to do so pursuant to Article XII § 1 [(adopting the HHCA)] of the state constitution." Plaintiffs argued that "Count 1 was never confined to any one particular year" and "certainly not to fiscal year 2016." Plaintiffs pointed out that "[w]ithout even considering inflation, it is obvious that the legislature failed to provide the [DHHL] with sufficient sums in fiscal years 2000-2013."

### 5. Final Judgment

As to Count 1 of the 2007 First Amended Complaint, the circuit court entered judgment in favor of the State and against Plaintiffs based on its findings for fiscal year 2015-2016.

As to Count 2 of the 2007 First Amended Complaint, the circuit court entered judgment in favor of DHHL and against Plaintiffs based on its findings for fiscal year 2015-2016.

The circuit court elaborated on its judgment regarding Counts 1 and 2 in its "Analysis and Conclusions Regarding Entry of Final Judgment[.]" (Formatting altered.) As relevant to this appeal, the court explained "[t]he only remaining issue in this court's view [is] the prior years, before FY 2015-2016. On

that issue, [the] court will practice strict abeyance to what it concludes is the express limit of the remand instructions -- determine sufficient sums for one year, FY 2015-2016."

Then, in a minute order, the circuit court removed Plaintiffs' Motion for Summary Judgment from the calendar because it was "moot in light of the Final Judgment entered 5/25/21. Although the [motion] was filed before the Final Judgment was entered, the court conclude[d] the issues presented were fully aired in the previous filings and arguments[.]" (Formatting altered.)

DHHL appealed, and Plaintiffs cross-appealed. The parties did not apply to transfer this case to the supreme court.

## II. STANDARDS OF REVIEW

Appellate courts review findings of fact under the clearly erroneous standard and conclusions of law under the right/wrong standard. Kalima v. State, 148 Hawaiʻi 129, 143, 468 P.3d 143, 157 (2020); Ching v. Case, 145 Hawaiʻi 148, 165, 449 P.3d 1146, 1163 (2019). But conclusions of law presenting mixed questions of fact and law are reviewed "under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawaiʻi, 106 Hawaiʻi 416, 430, 106 P.3d 339, 353 (2005) (cleaned up).

20

Interpretation of a court order is reviewed de novo. State v. Guyton, 135 Hawaiʻi 372, 377, 351 P.3d 1138, 1143 (2015).

### III. DISCUSSION

On appeal, DHHL challenges the circuit court's selection and application of the SLGC inflation index.[8]  Both DHHL and Plaintiffs challenge the circuit court's judgment in favor of the State on Count 1.  Plaintiffs additionally challenge the circuit court's judgment in favor of DHHL on Count 2.[9]  Again, the circuit court did not err in selecting and applying the SLGC index, but erred in entering judgment in favor of the State on Count 1 and DHHL on Count 2 as pled in the 2007 First Amended Complaint.

---

[8]  DHHL also challenges the circuit court's failure to provide a prospective method of calculating inflation.  DHHL fails to point to where in the record it brought this issue to the circuit court's attention and, thus, this challenge is waived.  See HRAP Rule 28(b)(4).

Even if this challenge was not waived, the 2007 First Amended Complaint did not request, and the prior appellate dispositions did not direct, that the circuit court set an inflation index for prospective use.  Nelson, 124 Hawaiʻi at 447, 246 P.3d at 379; Nelson I, 127 Hawaiʻi at 206, 277 P.3d at 300; Nelson II, 130 Hawaiʻi at 173-74, 307 P.3d at 153-54; Nelson III, 141 Hawaiʻi at 422, 412 P.3d at 928.  Thus, we cannot say that the circuit court erred when it did not identify a particular inflation index to be used prospectively.

[9]  Plaintiffs also challenge the circuit court's "effective[] den[ial]" of their motion for summary judgment.  Based on our decision, we need not reach this issue.

A.    **The Circuit Court Did Not Err in Selecting and Applying the SLGC Index**

On appeal, DHHL contends "the [c]ircuit [c]ourt erred in concluding that the best inflation rate was the SLGC, disregarding the words of the delegates at the 1978 Constitutional Convention and the legislature's authorization for positions at the DHHL."[10]  "Instead, the [c]ircuit [c]ourt should have adopted the 8-percent inflation rate set by the Delegates at the Debates or adopted the ECI and taken into account the increase in DHHL's staff size."

DHHL relies on the following excerpt from the debate to support its argument:

> "From [the $1.3 million] budget, $750,000 goes toward staff salaries for 66 percent of the staff.  Even this figure will rise as this portion of the staff is civil service and subject to an 8-percent annual inflation rate."

---

[10]  Appearing to challenge DHHL's standing, the State argues DHHL's appeal should be dismissed as it "is confusingly attempting to appeal from the judgment that the circuit court entered against Plaintiffs below" and that "[t]here is no legitimate legal basis for DHHL's appeal because DHHL is not a 'party aggrieved' by the judgment of a circuit court."

An aggrieved party is "one who is affected or prejudiced by the appealable order."  Leone v. Cnty. of Maui, 141 Hawai'i 68, 89, 404 P.3d 1257, 1278 (2017) (citations and internal quotation marks omitted).

The circuit court's selection of an inflation index *affects* the calculation of sufficient sums and, thus, *affects* DHHL's administrative and operating budget.  Montalvo v. Chang, 64 Haw. 345, 351, 641 P.2d 1321, 1326 (1982) (holding that, although the orders did not subject the State to further liability, the State was aggrieved "since its interests may well be jeopardized if the fees in question were improper") (overruled on other grounds by Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i, 92 Hawai'i 432, 992 P.2d 127 (2000)).  We therefore address DHHL's point of error.

Debates in the Committee of the Whole on Hawaiian Affairs Comm. Prop. No. 11, in 2 Proceedings, at 414.

This excerpt does not support the proposition that the delegates set an inflation rate at eight percent for the entire administrative and operating budget. The "8-percent annual inflation rate" referenced only a portion of the $1.3 million budget - the civil servant salaries. And the debates did not explain why civil servant salaries would be subject to an eight percent annual increase – by, for example, citing to a collective bargaining agreement – or tether the eight percent to any identifiable index.

In the alternative, DHHL contends that, "[i]f the [c]ircuit [c]ourt did not err in refusing to adopt the 8-percent inflation rate discussed in the Debates," the court should have applied the ECI.

Because "[t]here is no universally agreed formula to apply to all inflation adjustments[,]" the circuit court reviewed each proposed inflation adjustment method and made "findings as to which method the court decided to apply in this case, and why." The circuit court found that the SLGC index was the "better tool" to adjust for inflation because it "tracks how the average price of goods, services, and labor purchased by a government agency changes" and "tracks inflation for a

government agency's major costs of employee salaries and benefits as well as other government agency administrative and operating costs." (Internal quotation marks omitted.) Substantial evidence in the form of expert witness testimony supports the circuit court's finding. See Leslie v. Est. of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (explaining findings are "clearly erroneous when 'the record lacks substantial evidence to support the finding'" (citations omitted)).

Thus, the circuit court's finding that the SLGC was a "better tool" than the ECI or CPI to adjust the 1978 budget baselines for inflation was not clearly erroneous, and the circuit court did not err in selecting and applying the SLGC inflation index.

**B.    The Circuit Court Erred by Not Resolving Counts 1 and 2 as Pled in the 2007 First Amended Complaint**

Next, Plaintiffs and DHHL challenge the circuit court's entry of judgment on Count 1 of the 2007 First Amended Complaint in favor of the State and against Plaintiffs based on its fiscal year 2015-2016 findings.[11] Plaintiffs additionally

---

[11] The State again appears to challenge DHHL's standing to appeal, arguing that "DHHL appears to be improperly stepping into Plaintiffs' shoes" and that "DHHL is a stranger to Count 1 - there are no claims against DHHL under Count 1[.]"

Count 1 required a determination as to whether the State provided sufficient sums to DHHL, which *affects* DHHL's administrative and operating budget. See supra note 10 and accompanying text. In any event, Plaintiffs raise the same issue.

challenge the circuit court's judgment in favor of DHHL on Count 2.

To resolve these challenges, we must first interpret Nelson III's instructions to the circuit court.

### 1.   Nelson III's Instructions

"When a reviewing court remands a matter with specific instructions, the trial court is powerless to undertake any proceedings beyond those specified therein." Standard Mgmt., Inc. v. Kekona, 99 Hawaiʻi 125, 137, 53 P.3d 264, 276 (App. 2001) (citation omitted).  But "[t]he 'true intent and meaning' of a reviewing court's mandate is not to be found in a solitary word or decontextualized phrase, but rather in the opinion, as a whole, read in conjunction with the judgment and interpreted in light of the case's procedural history and context."  In re Hawaiʻi Elec. Light Co., 149 Hawaiʻi 239, 241, 487 P.3d 708, 710 (2021).

In Nelson III, the Hawaiʻi Supreme Court vacated the circuit court's judgments and underlying orders, reopening Counts 1 and 2 of the 2007 First Amended Complaint.  Nelson III, 141 Hawaiʻi at 422, 412 P.3d at 928; see Nelson I, 127 Hawaiʻi at 191 n.4, 277 P.3d at 285 n.4 (explaining that, although the circuit court's decision as to Count 2 was not appealed, the ICA "remanded the entire case for a decision on the merits, which reopened all the Counts").

In addition, the supreme court remanded the case to the circuit court "for further proceedings" and "to determine whether the State Defendants have provided 'sufficient sums' for DHHL's administrative and operating budget for the 2015-2016 fiscal year using the only judicially discoverable and manageable standard identified in Nelson I: the 1978 baseline of $1.3 to 1.6 million, adjusted for inflation." Nelson III, 141 Hawai'i at 422, 412 P.3d at 928.

Based on Nelson III's opinion and judgment and this case's procedural history, the circuit court's task was twofold - it was required to (1) determine the sufficient sums question for fiscal year 2015-2016 *and* (2) resolve Counts 1 and 2 of the 2007 First Amended Complaint. Nelson III, 141 Hawai'i at 422, 412 P.3d at 928; see Nelson I, 127 Hawai'i at 191 n.4, 277 P.3d at 285 n.4. To interpret Nelson III otherwise would leave undecided Plaintiff's claims as pled in the 2007 First Amended Complaint.

Thus, the circuit court erred by narrowly interpreting Nelson III's mandate.

Because Counts 1 and 2 were reopened, we look at the 2007 First Amended Complaint to determine the scope of Plaintiffs' claims.

"Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim

26

that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests.  Pleadings must be construed liberally." Adams v. Dole Food Co., 132 Hawaiʻi 478, 488, 323 P.3d 122, 132 (App. 2014) (cleaned up).

> To satisfy Hawaiʻi Rule[s] of Civil Procedure [Rule] 8(a)(1), "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."

Kawakami v. Kahala Hotel Invs., LLC, 142 Hawaiʻi 507, 517, 421 P.3d 1277, 1287 (2018) (cleaned up).

### 2.    Resolution of Count 1

Count 1 of the 2007 First Amended Complaint alleged the State violated its constitutional duty to sufficiently fund DHHL.  Although Count 1 broadly addressed all of HHCA's purposes, the supreme court in Nelson I narrowed the scope of what the circuit court could address to DHHL's administrative and operating expenses.  127 Hawaiʻi at 203, 206, 277 P.3d at 297, 300.

Though Plaintiffs argue their 2007 First Amended Complaint "was **not** focused on a single fiscal year[,]" Count 1 alleged that DHHL "does not currently receive sufficient funds for . . . the administration and operating budget[.]"  (Some emphasis added.)  Even when liberally construing the complaint and considering the factual allegations raised, Count 1's use of

"currently" indicates reference to the year the First Amended Complaint was filed - 2007, which could encompass fiscal years 2006-2007 and 2007-2008. See Adams, 132 Hawaiʻi at 488-89, 323 P.3d at 132-33 (explaining all pleadings must be "construed liberally" so "as to do substantial justice" (citations and internal quotation marks omitted)).

Here, the circuit court entered its May 25, 2021 Final Judgment in favor of the State and against Plaintiffs on Count 1 of the 2007 First Amended Complaint based on its finding of sufficient sums in fiscal year 2015-2016. The circuit court made no findings regarding the amounts the legislature allocated to DHHL's administrative and operating budget as related to 2007. The circuit court also made no findings as to the value of $1.3 and $1.6 million 1978 dollars adjusted for inflation to 2007 dollars. Absent these findings, the circuit court could not render a judgment on Count 1 as pled in the 2007 First Amended Complaint.

Thus, the circuit court erred in entering judgment in favor of the State and against Plaintiffs on Count 1 of the 2007 First Amended Complaint by relying on its findings for fiscal year 2015-2016.

3. **Resolution of Count 2**

Count 2 of the 2007 First Amended Complaint realleged and incorporated all allegations preceding it, which included an

28

allegation that the State "administration fails to <u>annually</u> request 'sufficient sums' for the administration and operating budget of the [DHHL] to assure that . . . all programs of the department prescribed under Article XII, § 1 are adequately funded."  (Emphasis added.)

The circuit court made no findings regarding the amount of funding DHHL requested annually for its administrative and operating budget prior to the filing of the 2007 First Amended Complaint (or for fiscal year 2015-2016).  Without findings as to the amount of funding DHHL requested, the circuit court could not render judgment on Count 2 as pled in the 2007 First Amended Complaint.

Thus, the circuit court erred in entering judgment in favor of DHHL and against Plaintiffs on Count 2 of the 2007 First Amended Complaint by relying on its findings for fiscal year 2015-2016.

## IV.  CONCLUSION

Based on the foregoing, to the extent the circuit court made determinations regarding Counts 1 and 2 of the 2007 First Amended Complaint based solely on its fiscal year 2015-2016 findings, we vacate those portions of the circuit court's May 25, 2021 Final Judgment and December 18, 2020 Findings of

Fact, Conclusions of Law, and Order; we otherwise affirm.  We remand this case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Melvyn M. Miyagi,<br>John E. Dubiel,<br>(Watanabe Ing),<br>for Defendants-<br>Appellants/Cross Appellees. | /s/ Keith K. Hiraoka<br>Presiding Judge<br><br>/s/ Karen T. Nakasone<br>Associate Judge |
| David Kimo Frankel<br>and<br>David Kauila Kopper,<br>Kirsha K.M. Durante,<br>(Native Hawaiian Legal<br>Corporation),<br>for Plaintiffs-<br>Appellees/Cross-Appellants. | /s/ Sonja M.P. McCullen<br>Associate Judge |
| Kimberly T. Guidry,<br>Solicitor General,<br>Kalikoʻonālani D. Fernandes,<br>Deputy Solicitor General,<br>for Defendants-Appellees/<br>Cross-Appellees. | |